HANNAH V. GALLAGHER et al.

*v.*

THE ASPHALT COMPANY OF AMERICA.

[Filed July 2d, 1903.]

1. Where a corporation, by pledging its stocks and securities to a trust company, procures the issuance of certificates based on its assets, and agrees to pay a sum semi-annually to the trust company for distribution among the certificate holders, such holders are creditors of the

corporation, entitled, under the Insolvent Corporation act of 1829, relating to the prevention of fraud by incorporated companies, to institute proceedings to enjoin it from exercising its franchises.

2. A bill by a creditor, under the Insolvent Corporation act of 1829 (*P. L. of 1829 p. 58*), entitled "An act to prevent fraud by incorporated companies," to enjoin a corporation from the exercise of its franchise, will not be dismissed on the ground that it shows proceedings in the United States circuit court in New Jersey instituted by a creditor against the corporation, based on diversity of citizenship, in which the federal court has taken full jurisdiction and control over the assets of the corporation, and has placed them in the hands of a receiver for distribution among the creditors, since the action under the Insolvent Corporation act is essentially a proceeding to fix the *status* of a corporation with reference to the exercise of its franchises, and the matter in dispute is not pecuniary in its nature, so as to confer jurisdiction on the federal court because of diversity of citizenship.

On motion to dismiss bill.

*Messrs. Carrick & Wortendyke, Mr. Julien T. Davies* (of New York) and *Mr. A. H. Wintersteen* (of Pennsylvania), for the motion.

*Mr. Charles E. Hendrickson, Jr., Mr. John Griffin* and *Mr. James W. M. Newlin* (of Pennsylvania), *contra.*

STEVENSON, V. C.

There are two grounds specified as the basis of the motion to dismiss the bill. The first ground is that the complainants have not the necessary qualification under our statute to maintain this suit. The bill is filed under our Insolvent Corporation act—the old act, first passed in 1829, entitled "An act to prevent fraud by incorporated companies." It sets forth, as I recall it now, with sufficient distinctness, the two jurisdictional facts, namely, that the defendant corporation, the Asphalt Company of America, is insolvent, and that it is not about to resume its business with advanage to the stockholders and safety to the public. It prays for a decree or decretal order that the corporation be enjoined from the exercise of its franchises, and the bill also contains the usual prayer in such cases, which may or

may not be granted, that a receiver be appointed to collect and administer the assets of the corporation.

The bill contains other important allegations, which constitute an independent ground—the second ground upon which the defendants base their motion to dismiss the bill—but I shall refer to those allegations further on.

Now, the first objection, as I have said, is that the complainants are not shown by the bill to have the necessary capacity under our statute, to institute the suit—to maintain the suit. It is claimed that the bill fails to show that they are what they call themselves, namely, creditors of the Asphalt Company of America.

Without the documents before me, and without having looked at them for several weeks, I shall not undertake to deal minutely with the arguments and reasons which have led me to the conclusion that this objection is not well taken. I think that the bill does disclose that the complainants who invoke this jurisdiction of the court stand as creditors of the Asphalt Company of America, according to their own showing in their bill.

The meaning of the word "creditor," as used in our statute in defining the classes of persons who are authorized to maintain this statutory proceeding, has been discussed in several cases. *Rosenbaum v. United States Credit System Co., 32 Vr. 543; Fort Wayne Electric Co. v. Franklin Electric Light Co., 12 Dick. Ch. Rep. 16; Spader v. Mural Decoration Manufacturing Co., 2 Dick. Ch. Rep. 18; Bolles v. Crescent Drug Co., 8 Dick. Ch. Rep. 615.* See, also, *New Jersey Insurance Co. v. Meeker, 8 Vr. 282.*

It is settled that the word "creditor" is not used in our statute in a narrow, technical sense. It is used in a broad sense, and I think it is safe to say that the general intention is that if a party is so related to the corporation and its assets as to be entitled to a share of what is divided among creditors—if the party can come into the proceedings as a claimant and prove his claim so as to be entitled to a dividend, it must be generally true that he is qualified as a creditor to institute the proceedings which result in the distribution of the assets in part to himself. But in this case it is not necessary to lay down so broad a rule

as that in order to find that the complainants are qualified as creditors. The Asphalt Company of America entered into direct contract obligations with the Land Title and Trust Company of Pennsylvania, a corporation under the laws of Pennsylvania, the company which issued $30,000,000 of trustee certificates based upon the assets of the Asphalt Company of America pledged to it—I say the Asphalt Company of America entered into direct contract obligations with the trust company, *for the benefit* of these certificate holders, and the complainants are certificate holders.

I recall one of these pecuniary obligations, which of itself alone seems to me is sufficient to make it clear that the *status* of the certificate holders is that of creditors within the purview of this act. The Asphalt Company of America, in their contract with the trust company, in which provision is made for the pledging of these stocks and bonds and securities of the asphalt company, and the issuing by the trust company of certificates to the extent of $30,000,000 secured by these stocks and bonds, covenants with the trust company to pay an amount of money, which is about $750,000, semi-annually to the trust company, for distribution among the certificate holders. Here is a contract made by the asphalt company with the trust company solely for the benefit of the certificate holders, and the trust company agrees, on its part, that it will send out checks semi-annually distributing this fund. The asphalt company has broken this covenant. The money due to the complainants is unpaid.

Here we have, therefore, the certificate holders not only holding a claim, which is plainly provable by them in the insolvency proceedings so as to entitle them to a dividend from the assets of the asphalt company, but we have that claim based directly upon a contract obligation of the corporation, made solely for their benefit with their trustee.

Now, an examination of the decisions to which I have referred, I think, will establish beyond question that these certificate holders, holding this sort of a claim, based upon this sort of a contract of the corporation, are creditors within the meaning of the act and have a right to institute this proceeding.

Gallagher *v.* Asphalt Co. of America.

I may add, in concluding this part of the case, that technicalities are disregarded in dealing with the relation of the assets of an insolvent corporation to the persons who are entitled thereto. As a rule, the persons entitled can come into court in their own names and take possession, and have control, rather, of their own property and receive directly the dividend that is due. The objection under consideration may, I think, be disposed of briefly by the proposition that the complainants, as *equitable* creditors of the corporation, are as safely within the meaning of the term "creditor," as used in our statute, as if their debts were recoverable in an action at law.

The second objection made to this bill is that it sets forth proceedings in the United States circuit court for the district of New Jersey, instituted by the Land Title and Trust Company of Pennsylvania against the Asphalt Company of America, the suit being based upon diversity of citizenship, in which suit the circuit court of the United States has taken full jurisdiction of the parties and full jurisdiction and control over all the assets of the Asphalt Company of America, and has placed those assets for distribution among the creditors of the Asphalt Company of America in the hands of a receiver appointed by it, the United States circuit court.

The objection is made that the entire jurisdiction of the court of chancery of New Jersey, which is exercisable under our statute, has already been exercised by the United States circuit court, and that therefore this court is as powerless to act as if a month ago, or three months ago, this corporation had been found by this court to be insolvent and not about to resume its business with advantage to the stockholders and safety to the public, and thereupon a decree had been made for this very same statutory injunction.

The question is whether the United States circuit court has, in fact, undertaken to exercise the jurisdiction of the court of chancery under this particular statute, basing its power to exercise such jurisdiction upon diversity of citizenship.

This subject has been argued at great length, with great learning and acuteness on both sides. The subject, perhaps, can be considered under two headings—*first,* whether the United States

circuit court in fact, is clothed· with jurisdiction under our statute, where there is diversity of citizenship, and *second,* whether, in fact, the United States circuit court has undertaken to exercise our statutory jurisdiction in this particular case.

It is argued, on behalf of the complainants, that the United States circuit court has no jurisdiction, can acquire none, based upon diversity of citizenship, to administer the relief provided for in our act. I regret that I have no notes and that my grasp of the details of this argument has been now so much relaxed, but I think I can indicate for present purposes the main reasons for the conclusion which I have reached on this very important question. I call it an important question, although I do not think it has the practical importance in this particular case which counsel on each side have supposed.

The record from the United States circuit court, which is exhibited by the amended bill, shows that the complainant in that case—the land title and trust company—came into that court as a creditor of the Asphalt Company of America, the defendant corporation. The bill contains the necessary allegations under our act to found the jurisdiction of the court of chancery. It prays for an injunction restraining the corporation from the exercise of its franchises; it also prays for a receiver. The record shows that upon the presentation of that bill the corporation voluntarily appeared in the United States circuit court and presented an answer ·admitting the allegations of the bill, and that the corporation consented to the appointment of a receiver. The record further shows that a decree was made by the United States circuit court upon this bill and answer, and this consent—a decree which is wholly by consent and which may have derived all its force from the consent of the defendant corporation—adjudging the corporation insolvent, directing an injunction forbidding it to exercise its franchises and appointing a receiver, and in respect of the details and form of this decree it is precisely such a decree as would be proper in the exercise of the jurisdiction created by our New Jersey statute.

The decree even directs that the receiver shall take the oath prescribed by our statute.

But the form of the decree is a matter of very little conse-

Gallagher *v.* Asphalt Co. of ·America.

quence in this case in endeavoring to ascertain precisely what the United States circuit court undertook to do—what it intended to do. ,The decree, presumably, was drawn by counsel for complainant, was consented to by the defendant, was signed as a matter of course by the learned judge of the United States circuit court. If the defendant corporation saw fit to consent that it should be enjoined from the exercise of its franchises, . there was no reason why the court should hesitate to sign such a decree. If the party complainant for whom the decree was drafted inserted therein a provision that the receiver should take an oath prescribed by the New Jersey statute, and if the defendant corporation consented to that feature of the decree, as it did in this case, there was no reason why the learned judge should examine the decree minutely and determine whether it was strictly proper and germane to the real proceedings in his court to have such a provision inserted. The decree would be signed as a matter of course. We are obliged, therefore, to go beyond the form of the decree in order to ascertain precisely what jurisdiction the United States circuit court exercised in this case.

After giving the subject the very best attention that was possible on my part, aided by the exhaustive and learned and satisfactory briefs and arguments to which I have referred, I have reached the conclusion that the United States circuit court did not undertake to exercise the jurisdiction conferred by the New Jersey statute upon the court of chancery, but undertook to exercise, and did exercise, an entirely distinct jurisdiction, which has been evolved by the decisions of the federal courts during a series of years. And this peculiar jurisdiction seems . to be unlike any equitable jurisdiction—general equity jurisdiction—that exists in the State of New Jersey.

The doctrine is established in a series of federal decisions that the assets of an insolvent corporation constitute a trust fund for creditors. This doctrine was announced a great many years ago by Judge Story. It has been very much criticised. Professor Pomeroy refers to the doctrine .as one based upon analogy and metaphor. *2 Pom. Eq.* § *1046.* But this theory that the ordinary general assets of an insolvent corporation are

a trust fund for creditors has been worked out in the federal courts so as to establish a somewhat unique branch of equity jurisdiction. And this is the peculiar situation to which the doctrine has been applied, and which is fully illustrated in this case in the United States circuit court for the district of New Jersey. A general creditor, who, presumably, would be regarded as a beneficiary of the trust fund, has no power to come into a federal court with a bill in order to have the trust fund—the assets of the insolvent corporation of which he is a beneficiary—administered for his protection. He has no power to file a bill to prevent the corporation from dissipating the assets and to get a trustee who will act for him and his co-beneficiaries installed and placed in the possession of the trust fund. The doctrine that the assets are a trust fund is not sufficiently potent to enable the beneficiary to get such relief. But he can come into court as a creditor who has exhausted his remedy at law, alleging his judgment, his execution, the return of the execution unsatisfied, and thereupon, through a creditors' bill, the court will, of course, take cognizance of his grievance and seize the assets of the corporation. But here the peculiarity of the doctrine as worked out comes in, that although that sort of a creditors' suit is generally maintainable for the benefit of the complainant, and the common allegation in the complainant's bill that he files his bill for the benefit of all other creditors, is mere surplusage, as Vice-Chancellor Pitney recently pointed out—the case is *Iauch* v. *de Socarras, 11 Dick. Ch. Rep. 524*—I say although, according to the equitable theories that we recognize here a creditor coming into a court of equity with such a bill would act for himself, and would be protected and preferred by the decree of the court, such is not the case as this trust fund doctrine has been wrought out in the federal courts. The court undertakes to seize and sequestrate the assets of the corporation, but it does it then for the benefit of all the creditors of the corporation. Mr. Justice Brewer points out this peculiar feature—or indicates it—in a recent opinion in the United States supreme court. The whole efficiency of the doctrine that these assets are a trust fund for creditors is found only when a creditor has come in, not directly as a beneficiary

of the trust fund, but in a different capacity, in the guise of a
creditor who has exhausted his remedy at law and who is seek-
ing to get a preferential payment—for that is what it amounts
to—getting a sequestration of the assets for the payment of
his debt, to the exclusion of anybody else.  But right at this
point the federal court stops the creditor and says: "You have
now qualified yourself to come into court in one capacity, but
you are confronted by the trust fund doctrine, and while you
can get some relief, the same relief, equal relief, will be accorded
to all your co-beneficiaries—all the creditors."

One of the most interesting features of this application of
the theory that, unlike the case of a natural person, when a
corporation becomes insolvent, immediately some sort of a trust
is fastened upon its assets for the equal benefit of its creditors,
is exhibited in the essential basis of this novel suit, which recog-
nizes and enforces the so-called trust.  The complainant cannot
come into court as a beneficiary, as I have heretofore remarked:
he must come in as a judgment creditor who has exhausted his
own personal remedy at law.  `If by judgment, execution and
levy upon all these assets of the insolvent corporation—this so-
called trust fund—he can satisfy his debt in preference to all
his co-beneficiaries, and even to the exclusion of them all, then
he is turned out of the court of equity—the court of equity has
no jurisdiction.  The court of equity says to him: "You cannot
have this trust fund administered for the equal benefit of your-
self and your co-beneficiaries because you have not proceeded
at law to absorb all that part of the trust fund which is leviable
and appropriate it to yourself, as you might have done by a
judgment and execution."

So far as I am aware, we do not recognize in New Jersey any
original principle of equity jurisprudence which fastens upon
the assets of a corporation, upon its becoming insolvent *eo in-
stanti,* a trust for the equal benefit of all the creditors of the
corporation.  We do have, however, certain statutes which pro-
vide in certain instances and under certain conditions for the
equal distribution of the assets of an insolvent corporation and
prevent creditors of the corporation from obtaining preferences,
but this result has been wholly reached by legislation which

brings about a condition of things, a relation of the assets of the insolvent corporation to its creditors which, by metaphor and analogy, as Professor Pomeroy says, may be called a trust. A trust does not produce, however, the equality among creditors as beneficiaries of the trust. The statutory provision produces equality from which a result is reached which is in effect the same as if a trust existed.

In 1825 the legislature of New York passed an important statute, to which I shall refer again, regulating in many different respects the rights and liabilities of banking and other corporations of that state. One section of this long statute regulates the creditors' bill filed in aid of execution against a defendant corporation, and enacts the very rule which the federal courts have evolved with reference to the distribution of the assets of the corporation which the court in such a suit is asked by the complainant to sequestrate.

In the case of *Morgan* v. *New York and Albany Railroad Co., 10 Paige 290,* decided in 1843, eight years after this New York statute was enacted, Chancellor Walworth held that the section above referred to "adopted the principle as to insolvent corporations that equality among creditors is equity." The New York chancellor does not intimate that, apart from this statute, any such principle of equality growing out of the idea that the assets of an insolvent corporation were a trust fund, would restrain the diligent creditor from appropriating those assets to the preferential payment of his debt.

In New Jersey an insolvent corporation, in the absence of express statutory prohibition, has the same dominion over its assets that an insolvent natural person possesses. It can exercise its power by preferring creditors, which seems to be inconsistent with the proposition that the assets of an insolvent corporation are impressed with a trust for the equal benefit of all its creditors. The legislature at the present time prohibits such preferences and creates a condition which, under some circumstances, yields to all the creditors the same advantages as if a trust for their equal benefit were impressed upon the assets. But, nevertheless, to-day (as well as at all times heretofore) the diligent creditor of a corporation can recover a judgment against

Gallagher *v.* Asphalt Co. of America.

it and have all its leviable assets, which perhaps would include all its assets, sold for his benefit. This same judgment creditor, in case he fails to satisfy his debts through an execution upon his judgment, can file a bill in the court of chancery, under its general equity jurisdiction, to reach leviable assets fraudulently conveyed or concealed, and thus he can get a preference out of the so-called trust property.

When the jurisdiction of the court of chancery in aid of execution was extended by a statute passed in 1845 (*P. L. of 1845 § 141*), so as to permit a creditor who had exhausted his remedy at law to come into equity and secure the appropriation of the non-leviable assets of the judgment debtor, the suit was for the benefit of the complainant, the judgment creditor, and he obtained a preference thereby. This act was meagre and did not expressly authorize a receivership. A supplement was passed in 1864 (*P. L. of 1864 p. 704*) greatly enlarging the remedies of the judgment creditor and providing, among other things, that it should be lawful for the chancellor to make an order requiring the judgment debtor to appear and make discovery on oath concerning his property and things in action before a master, &c. These statutes were combined in subsequent revisions of the Chancery act, and in the case of *Mallory* v. *Kirkpatrick, 9 Dick. Ch. Rep. 50, 58 (1895)*, the opinion is expressed that at the present time the statute, as a whole, "applies only to natural persons as defendants, who may be called upon to be examined under oath, and has no application to a corporation." Assuming this to be the correct construction of the act in its present form, the inability of a judgment creditor of an insolvent corporation to reach the non-leviable assets of the corporation by a creditors' bill under the act is not the result of any trust theory which stands in his way, but merely results from the fact that the machinery of the statute is not applicable to the particular case of a corporation defendant. It may be conceded that this situation is created, or rather left, by the statute, if such is the situation, in order to encourage the equal distribution of the assets of insolvent corporations under the statute provided specially for that case.

In 1850 the legislature provided for summary proceedings

Gallagher v. Asphalt Co. of America.

in our courts of law in aid of execution. *P. L. of 1850 p. 301.* In regard to this statute, however, there could be no question. An essential part of the machinery which it provided was an order "requiring the judgment debtor to appear and make discovery on oath concerning his property and things in action 'before a judge or supreme court commissioner.'" In the case of *Conner* v. *Todd, 19 Vr. 361,* the court of errors and appeals decided, in 1886, that the statute, which by that time had been incorporated into the act respecting executions (*Rev. Stat. pp. 389, 393 § 23*) was "adapted to the case of judgments against natural persons," and not to the case of corporations. The legislature, however, soon after amended the statute so as to expressly bring within its operation the case of a corporation defendant. *P. L. of 1893 p. 450; Gen. Stat. p. 142 § 41.*

Here we have the legislature of the state distinctly receding from the general policy and trend of its prior enactments. "The principle as to insolvent corporations that equality among creditors is equity," is abandoned and the diligent creditor is aided in getting a preferential payment of his debt.

There are instances, as I have intimated, where statutes of New Jersey operate to procure an equal and *pro rata* distribution of the assets of an insolvent corporation among its creditors. This equality, however, is the creation of the statute, not of any trust theory; the condition which by metaphor and analogy can be described as a trust is the direct result of positive legislation.

The most conspicuous illustration of this sort of legislation is the statute under which the bill in this case is filed—our present Insolvent Corporation act, first passed in 1829. Creditors of an insolvent corporation may get preferences in various ways, as I have heretofore stated, to the utter destruction of any condition of affairs which could properly be deemed to include a trust for the benefit of all the creditors. If, however, no preference is obtained; if a creditor or stockholder has recourse to the statute under which this present suit is brought, then equality among all the creditors is rigidly prescribed in respect of the distribution of the corporate assets, and the

creditors of the corporation practically have the same result as if there had been a trust.

In the case of the liability of stockholders on their unpaid subscriptions, our statute creating or defining that liability was held by the court of errors and appeals, in the leading case of *Weatherbee* v. *Baker, 8 Stew. Eq. 501 (1882),* to produce equality among the corporation creditors because the liability under the statute could not be enforced without an administration of all the assets of the corporation, their application to the payment of the entire mass of corporate indebtedness and the ascertainment of the deficiency for which the stock subscribers should respond. Here, again, the condition of equality which gives the creditors an advantage similar to that which a trust would give them is the creation of a statute and not an application of any general principle of equity jurisprudence.

I think it is safe to say that in New Jersey, apart from the direct effect of statutes, an insolvent corporation has the same dominion over its assets, and its creditors have the same power to reach those assets for the payment of their claims that we find exhibited in the case of an insolvent natural person. The modifications and limitations of this dominion of the corporation over its property, and of this power of the creditors to reach that property preferentially, are derived from our statutes and not from any theory that immediately upon the insolvency of a corporation anything that can properly be described as a trust is created in respect of the corporate assets. Of course, when by reason of insolvency or of the dissolution of a corporation, or from any other cause, the assets of the corporation are placed in the possession of a receiver, or have become vested in him by law, a trust of a high character at once is created. But neither the insolvency or other condition of the company, nor the commencement of a suit to establish a receivership and the trust connected therewith, has the effect to establish such trust.

I am not undertaking to criticise the equity jurisprudence which has been evolved by the federal courts. My object is simply to point out that this record from the United States circuit court, if construed as based upon the laws of New Jersey, must of necessity, it seems to me, be deemed to present the

Gallagher v. Asphalt Co. of America.

statutory suit under our Insolvent Corporation act, precisely the same suit as the one now before this court. The delicate question would then arise whether the court of chancery of New Jersey would inquire whether the United States circuit court had exceeded its jurisdiction and had assumed to take jurisdiction of a statutory suit or proceeding under the laws of New Jersey exclusively within the cognizance of the New Jersey courts. No such question, however, is necessarily presented, because, as we have seen, the federal court had ample jurisdiction to sequestrate, by means of a receiver, all the assets of this insolvent corporation and distribute them equally among its creditors, and, in aid of that jurisdiction, to control the corporation by means of any appropriate injunction.

It may be noticed that the record from the United States circuit court does not disclose any judgment at law recovered by the complainant or any unsatisfied execution to prove that the complainant had exhausted its remedy at law. But this only illustrates the very last touch, the final development of the federal doctrine under which the federal courts of equity get jurisdiction to distribute the assets of an insolvent corporation equally among all its creditors. The fact that the complainant has not exhausted his remedy at law through judgment and execution is held by the federal courts to be a matter of defence which the defendant corporation may waive.

It is optional with the insolvent corporation to defeat the effort of its creditor to procure an equal distribution of its assets among all its creditors until he, the moving creditor, shall have appropriated to himself by judgment and execution at law all the leviable assets. In this instance the waiver, under the authority of the federal decisions, was absolute and complete when the defendant corporation came into court in answer to a bill which did not allege either a judgment or unsatisfied execution, and by answer failed to set up this defence, but admitted its insolvency, and then afterwards, in open court, consented to the decree for an injunction and a receiver, which was thereupon entered.

One of the latest and perhaps now the leading case in the United States supreme court which sustains the principles of

federal equity jurisprudence to which I have referred, and most amply sustains the jurisdiction of the circuit court of the United States in this case of *Land Title and Trust Co.* v. *Asphalt Company of America,* is the case of *Hollins* v. *Brierfield Railway Co., 150 U. S. 371 (1893)*, in which many prior cases are cited and discussed. These decisions show that the United States circuit court had most absolute and complete jurisdiction on the bill and answer presented to it, accompanied by the consent and waiver of the defendant, to sequestrate all the assets of this insolvent corporation by means of a receiver, and to distribute those assets equally and ratably among all the creditors of the corporation, and, of course, to enjoin the corporation from dissipating these assets or doing anything which would interfere with their administration under the direction of the court.

The fact that no jurisdiction over the assets of an insolvent corporation as distinguished from a natural person, apart from our statutes, is vested in the court of chancery of New Jersey, if such be the case, as I believe it to be, does not in any way affect the jurisdiction of the federal equity court. Long ago the federal courts abandoned the idea that where their jurisdiction is based upon diversity of citizenship, the sole object of the constitution of the United States in conferring such jurisdiction was to provide an impartial tribunal for the administration of precisely the same law which the state courts otherwise would administer under temptations to favor their own citizens. Over a wide field of jurisprudence the federal courts exercise their judicial powers unrestrained by the law of judicial decision evolved through the instrumentality of the state courts. Thus we oftentimes have this very curious result—that in a suit between a citizen of New York and a citizen of New Jersey, if the suit is tried in the supreme court of New Jersey, the decision may be one way, and, if tried in the supreme court of New York, the decision may be precisely the same, and yet if it is tried in the United States circuit court, either in New York or in New Jersey, the decision may be in an opposite way. But with this we have nothing to do. The federal equity courts have distinctly established the jurisdiction which I have endeavored to describe; and, in the arguments in this case, all these federal cases were

cited to sustain the jurisdiction of the United States circuit court in this suit of *Land Title and Trust Co.* v. *Asphalt Company of America.* But it is plain that these cases sustain the jurisdiction, not because the same is based or can be based upon our New Jersey Insolvent Corporation law, but because the facts of the case—the essential facts—apart from the mere color given to those facts in the pleadings and decree, bring the case directly within the operation of this trust fund theory and call for the exercise of this unique and peculiar jurisdiction of the federal court of equity over the assets of an insolvent corporation.

In regard to those features of this record of the United States circuit court which belong only to a suit under our Insolvent Corporation act, and are not proper or germane to a creditors' suit under the trust fund theory, it is enough to say that it seems apparent that the counsel for the complainant supposed that he was invoking the jurisdiction created by our statute, and not the jurisdiction which has been set forth and defended in the argument before this court, and upon which the defendants in this case have largely depended in order to maintain their position. The form of the proceedings in the United States circuit court was, of course, determined by the counsel for the complainant in that case. If the corporation defendant saw fit to consent to a wider injunction than the requirements of the case demanded—an injunction in the form prescribed by our New Jersey statute restraining it from the exercise of its franchises—there is no reason why the United States circuit court should have declined to allow the injunction to go in that form.

It must be conceded that the question whether the United States circuit court for the district of New Jersey can take jurisdiction of our statutory action for winding up an insolvent corporation, is a federal question, to be settled by the decisions of the federal courts, and ultimately by the supreme court of the United States. If the learned judge of the United States circuit court in this case had by a written opinion, or otherwise, manifested that he consciously intended to exercise in the case before him the jurisdiction created by our New Jersey statute, instead of exercising the perfectly plain jurisdiction

which the federal decisions have wrought out and thoroughly founded, his opinion would be entitled to the greatest degree of respect and might be regarded by this court as controlling the situation here. But he made no such deliverance, and I cannot impute any such opinion to him. He had a wide enough jurisdiction for the requirements of the case before him based upon these decisions of the federal courts, especially the United States supreme court to which I have referred, and in my opinion he exercised that jurisdiction and no other.

This court cannot find because of the insertion of certain provisions in this decree by consent that the learned judge went beyond the perfectly plain jurisdiction which he could exercise and entered into an unknown field and undertook to exercise a special jurisdiction under a statute of New Jersey passed over seventy years ago, which, so far as the combined researches of counsel and of the court have disclosed, has never been attempted by any other federal judge.

I shall now endeavor, as briefly as possible, to state some of the reasons why, as it seems to me, notwithstanding the form of this record from the United States circuit court, the true conclusion is that that court has no jurisdiction of the suit in equity provided by our statute against an insolvent corporation, and consequently the learned judge of that court, in the case above referred to, did not undertake to exercise such jurisdiction. My conclusions on this subject were reached after careful consideration, with the aid of the exhaustive and able arguments of counsel, but I regret that many matters of detail have now gone from my mind.

The first subject which calls for attention is the exact nature of the proceeding under our statute, under the act of 1829, entitled "An act to prevent fraud by incorporated companies." Both sides, I think, conducted their argument somewhat under a misconception in regard to the nature of this act—or at least upon the idea that the suit brought under that act is an action for a receiver—an action necessarily to reach assets and effect their distribution through a receiver. I do not find that that is the main purpose and object of our statute, and the history of our statute strongly indicates that that view is erroneous.

In my opinion, our statute, originally passed, as I said, in 1829, provides for a proceeding more in the nature of a *quo warranto* than of a creditors' bill. It provides for a proceeding which can be pursued to a finish, even though the corporation has no assets whatever. Whether a receiver shall be appointed under our statute or not is wholly discretionary with the court, and the receivership is not the essential object of the suit. The discretionary power to appoint a receiver can only be exercised at the time the injunction is ordered, or at some time thereafter. The receivership is purely ancillary to the principal relief, and in the original act of 1829, as in our present Corporation act, is provided for in a subsequent section to that which provides for the injunction as the principal object of the suit.

Our statute of 1829 was modeled largely upon the New York statute passed in 1825, to which I have already referred. This act was entitled "An act to prevent fraudulent bankruptcies by incorporated companies, to facilitate proceedings against them, and for other purposes" (*N. Y. Ses. L. of 1825 ch. 325 p. 448*), and it embraced a variety of provisions of very great importance affecting various classes of corporations. One section of this act—section 5 (*Rev. Stat. §§ 36, 37*)—I have already referred to as regulating the special case of a creditors' bill in aid of execution filed against a corporation defendant, establishing the principle of equality of distribution in that particular case.

Another section—section 17 (*Rev. Stat. §§ 39, 49*)—of this New York statute is evidently the origin of those provisions of our act passed four years later—in 1829—which creates the statutory action against an insolvent corporation for an injunction disabling it from exercising its franchises, and in some, or in most, cases including the ancillary proceeding of a receivership for the distribution of the corporate assets. This section, however, of the New York law was applicable only to incorporated banks. It provided that it should be the duty of the attorney-general of the state, when a bank became insolvent, to apply to the court of chancery for an injunction to restrain the bank from exercising any of its franchises, and from col-

lecting debts or paying out or transferring moneys or other assets of the corporation. The injunction is, in substance, precisely the same as that prescribed in our New Jersey act. The section also gave power to the court to appoint a receiver to collect and distribute the assets of the bank among its creditors, such power manifestly being exercisable only when there were assets to collect and distribute, which generally would be the case. But it is noticeable that this New York act, which is the kernel of our New Jersey act, was applicable only to incorporated banks, and the duty was placed upon the attorney-general of the state of enforcing its provisions. However, this law expressly gave the power to any *creditor* of the bank to maintain the suit, although the relation of the proceeding to the government of the state and the welfare of the whole people is indicated by the imposition upon the attorney-general of the duty to institute it. When this law was revised and embodied in the revised statutes of New York—the famous revision and codification of 1829—this special remedy remained confined to the case of banking corporations, but the suit was allowed to be brought either by the attorney-general, on behalf of the state, or by any creditor or *stockholder* of the corporation.

The framers of our act in 1829, while no doubt they had the New York act before them as a model, gave a far wider operation to their statute than that which the New York act possessed. They made their statute applicable not only to insolvent banks, but to all insolvent corporations excepting a few special kinds. They allowed any stockholder or any creditor to institute a suit. While they failed to impose upon the attorney-general of the state the duty of instituting the suit in a proper case, nevertheless they recognized the interest of the state in the affair by requiring as a jurisdictional fact not only that the corporation defendant should be insolvent, but that it should be found that the insolvency was of such a character that the corporation was not about to resume its business in a short time thereafter "with safety to the public," as well as advantage to the stockholders.

As in the New York act, the direct object of the suit is accomplished by an injunction placing the corporation under

disabilities—restraining it from the exercise of any of its franchises. As in the New York act, the receivership is purely discretionary, and when created follows the decree for an injunction. A decree for an injunction might go, although there were no assets. The order appointing the receiver could never be made unless the decree passed at the same time, or had already passed, disabling the corporation by the injunction.

The decree in our statutory suit, as I have stated, is based upon two jurisdictional facts to be found by the court, viz.— *first,* insolvency of the corporation, *i. e.,* common law insolvency—not any other kind of insolvency, such as that defined by the United States Bankrupt act—and *second,* that the corporation is not about to resume its business with advantage to the stockholders and safety to the public. We have got in the habit of calling the decree based on these two jurisdictional facts a decree of insolvency. This seems to me to be a misnomer. It is not a decree of insolvency. Insolvency is one of the jurisdictional facts upon which the decree goes. The decree itself is that the corporation shall be enjoined from the exercise of its franchises. That is the decree. It is often said that our statutory suit is a proceeding *in rem*—that the *status* of the corporation is permanently fixed by this decree. True enough. But the *status* is not the *status* of a corporation as insolvent. It is the *status* of a corporation with respect to the exercise of its franchises. The *status* that is determined and fixed by the decree is that of a corporation under disabilities, enjoined from exercising its franchises. This *status* corresponds very nearly with that which is established by the ordinary decree or order in the case of proceedings *de lunatic inquirendo,* or in relation to drunkards, spendthrifts, &c., which result in placing a natural person under disabilities. This decree, under our statute, places the corporation under disabilities, and that is the direct object of the suit, and in large numbers of instances of necessity might be the sole result of the suit, although practically a stockholder or creditor of an insolvent corporation would hardly be induced to prosecute a somewhat expensive suit in equity unless after the direct object of the suit had been obtained he saw as an incidental result some advantage to himself.

Now, I think it will be perceived that our statutory suit is a proceeding more in the nature of a *quo warranto* than a creditors' bill for a receivership. In the case of a creditors' bill, the direct object is the sequestration of the assets by a receiver, and any injunction is ancillary to that object. If there are no assets, and consequently no receivership, it would be a strange case which would afford any function for an injunction. On the other hand, in the case of a *quo warranto* suit, the direct object is to procure a forfeiture of the corporate franchises—practically corporate death—and a receivership in those states where there can be a receivership in a *quo warranto* case is purely ancillary and dependent upon the necessities of the particular case—dependent upon the existence of assets to be received and distributed.

That the appointment of a receiver is not the direct object of our statutory suit against an insolvent corporation, that such appointment is purely ancillary, and may or may not be made, according to circumstances, follows, it seems to me, from the fact that our statutory suit may be maintained against a corporation which has not a dollar of assets and has no expectation of ever having any.

Take the class of cases of which *Weatherbee* v. *Baker* is the type, where a creditor's suit is maintained against an insolvent corporation to reach unpaid stock subscriptions. Insolvency, although practically existing in every case, is not a jurisdictional fact. The *status* of the corporation, in respect of the exercise of its franchises, is not affected further than some ancillary injunction issued in pursuance of the main object of the suit may have a temporary effect in that direction. But what I want to point out is that after the whole jurisdiction has been exercised in a case like that of *Weatherbee* v. *Baker,* the corporation still lives and is in possession of its franchises and is liable to this statutory suit to place it under disabilities, and any stockholder or any creditor has power to institute and maintain such a suit, even though there are no assets, all having been distributed in the prior creditor's suit.

Suppose a New Jersey corporation is adjudged bankrupt and all its assets become vested in a trustee in bankruptcy for dis-

tribution under the bankrupt law. The bankrupt court cannot touch the life of the corporation or permanently enjoin it from the exercise of its franchises. The jurisdiction of the court of chancery under our statute still remains and can be exercised against this bankrupt corporation at the instance of a stockholder, or, strange to say, even at the instance of a creditor, although the corporation does not possess, and may never possess, a dollar of assets so as to make a receivership proper or necessary.

Where a federal court, as in the case which I think is presented by this record from the United States circuit court, has sequestrated for distribution the entire assets of an insolvent corporation under this trust fund theory which we have been considering, no permanent effect is produced upon the *status* of the corporation with respect to the exercise of its franchises. The situation is the same as in the case of a corporation after it has been stripped of its assets at the suit of a creditor of the kind illustrated in *Weatherbee* v. *Baker*.

The essential character of our statutory suit against insolvent corporations as something affecting the *status* of the corporation in respect of the exercise of its franchises—the *status* of the corporation with respect to the State of New Jersey, from whom the grant of corporate franchises was derived—and not necessarily relating to the administration of corporate assets, is further indicated by the series of statutes which the legislature has passed in regard to the dissolution of the corporation as a part of or result from this statutory suit. The last statute of this kind gives the court of chancery discretionary power to make an order dissolving the corporation, and the constitutionality of this act, so far as I know, has never been questioned. *Gen. Corp. Act of 1896* § *69*. Would the United States circuit court have the power, at the end of the administration of the assets of an insolvent New Jersey corporation, to make an order dissolving the corporation? Has such a jurisdiction ever been exercised?

It has often been said that our legislation for winding up insolvent corporations amounts, practically, to a state bankrupt act. I do not question the general accuracy of this description of the ordinary practical operation and result of our statutory

action.  Any action against an individual or a corporation, sol-
vent or insolvent, which results in the sequestration of all the
defendant's property and the distribution of it among his or
its creditors, partakes of the nature of a bankrupt act.  This
feature is exhibited in *quo warranto* cases where they can be
accompanied by a receivership.  But a bankrupt act in some
important respects is radically different from our Insolvent
Corporation act.  The bankrupt act distributes the assets, but
in large numbers of cases leaves the former owner of the assets
not only in full possession of all his rights and privileges, in-
cluding the opportunity of acquiring assets, but also discharged
from all his former debts.  The discharge of the bankrupt is
a distinct object and to many minds appears to be the main
object of bankruptcy proceedings.

On the other hand, our statutory action puts the defendant
corporation practically to death and then begins, and then only
can begin, to distribute the assets of the practically defunct
corporation among its creditors.

It is true that actions at law or suits in equity to disable or
dissolve a corporation, in the great majority of instances, would
not be brought if there were no assets to be distributed as the
result of the practical extinction of the corporate life by the
decree for an injunction or the judgment of ouster.  But there
is no essential relation between a condition of insolvency and
the maintenance of these actions at law or in equity which attack
the life of the corporation.  A *quo warranto* proceeding, with a
resulting distribution of the corporate assets, may be conducted
to a conclusion against a solvent corporation.  A state may
enact that entirely solvent corporations shall be dissolved or
perpetually enjoined from exercising their franchises (which
is practically the same thing as dissolution) whenever the capital
has been impaired to the extent of fifty per cent.  Every state
has a wide range for the exercise of its discretion to permit its
corporations to continue in business—continue the exercise of
their franchises which the state has conferred upon them, or
to withdraw or suspend the power to exercise those franchises.
Where the state sees fit to disable or dissolve its corporations,
distribution of assets necessarily follow, and must be provided

for in case there are assets to distribute.   According to any correct legal theory, however, it seems to me that the object of the suit to dissolve or suspend the corporate existence, whether instituted by the attorney-general of the state or by a stockholder or creditor of the corporation, is not to take the assets from the corporation for such distribution.   The object of the suit, it seems to me, is to disable or dissolve the corporation, while the distribution of assets is an incidental *result,* which may, but does not necessarily, follow.

If the views which I have indicated are correct, the true conclusion would seem to be that the suit in equity under our Insolvent Corporation act to-day has for its primary object the relation of the corporation to the State of New Jersey, which gave it corporate existence, and the distribution of the assets of the corporation among its creditors through a receiver is a mere incident, something ancillary to the principal relief sought, which may, or may not, be a part of the proceedings.

With this analysis of our statutory suit in mind, the question whether the United States circuit court has jurisdiction to entertain it when there is diversity of citizenship, it seems to me, is less difficult to answer.

Counsel for the complainants insisted strenuously that the federal courts do not get jurisdiction under the constitution of the United States and the federal judiciary act of novel, legal and equitable actions, which were not recognized when the federal judiciary act was established, more than a century ago. This view, it seems to me, is not sustained either by authority or principle.   Many decisions were cited on both sides of this question, to which I cannot now refer.   The sole object, as I have always believed, of the framers of the constitution in creating this jurisdiction in the federal courts based upon diversity of citizenship was, as I have said before, to provide an impartial tribunal for the administration, however, of precisely the same law which the state court otherwise would enforce.   We all know how far away from this idea the federal law of judicial decision has gone.   It seems to me that the true theory of the origin of this federal jurisdiction based on diversity of citizenship requires that as fast as new legal and equitable actions are created by

statutes of the states they become cognizable in the federal court, where there is diversity of citizenship—a condition of things which, to the minds of "the fathers," called for special care in the provision of an impartial tribunal. If, therefore, this suit under our New Jersey Insolvency act is a suit in equity of a civil nature, wherein the "matter in dispute" is measurable in money and exceeds in value $2,000, it seems to me that the jurisdiction of the United States circuit court to entertain it is beyond dispute, even though this statutory suit is an extension of the jurisdiction of the court of chancery, and is a suit of a kind unknown to equity jurisprudence in this country a hundred years ago.

The difficulty in the way of maintaining the jurisdiction of the United States circuit court of our statutory suit against an insolvent corporation appears to me to be that "the matter in dispute" is not measurable in money.    It is perfectly well settled by a series of decisions in the United States supreme court that the Judiciary act confers jurisdiction upon the United States circuit court where there is diversity of citizenship only where the controversy, "the matter in dispute," is pecuniary in its nature and capable of estimation in money, and exceeds the amount stated—$2,000. *Barry* v. *Mercein, 46 U. S. 103; Kurtz* v. *Moffitt, 115 U. S. 487; Perrine* v. *Slack, 164 U. S. 452.*

No doubt, under the constitution of the United States, it is competent for congress to vest in the United States circuit court jurisdiction in a great· variety of cases in which no jurisdiction has been conferred, and in respect of which the policy of the national legislature for a century has been to withhold jurisdiction.

If there is a "controversy" between citizens of different states of such a character as to be a proper subject of the exercise of what is called in the constitution "judicial power," then it follows that the judicial power of the United States may be exercised by the courts of the United States to the extent that congress sees fit.    The constitution defines the "judicial power" of the United States, not of the courts of the United States, except to a limited extent in the case of the supreme court. To what extent, therefore, the granted judicial power shall be

exercised depends wholly upon the legislation of congress. The question in every case is simply one of statutory construction: Has congress provided for the exercise of "the judicial power *of the United States*" in this particular case? In endeavoring to answer that question for the purposes of the present case, the narrow question is, as we have seen, whether our statutory action against an insolvent corporation is one in which the matter in dispute is pecuniary in its nature—is measurable in money. If it is, then in this case, although I understand the fact was not alleged in the bill filed in the United States circuit court, it seems to be conceded that the assets of the Asphalt Company of America, the defendant corporation, exceed in value $2,000.

In determining whether the "matter in dispute" in our statutory action is pecuniary in its nature or not, it is manifestly necessary that a correct idea should be entertained of the essential nature of this action. If the action is essentially a proceeding for a receivership to take assets from a defendant and distribute them among a class of creditors or stockholders of whom the complainant is one—if, in other words, the action is in substance a creditor's suit for a receiver, with an incidental injunction—then the matter in dispute is plainly pecuniary in its nature.

If, on the other hand, the action is essentially in the nature of a *quo warranto*—a proceeding to fix the *status* of a corporation with reference to the exercise of its franchises, which, ordinarily, can only be brought by the attorney-general or other official representing the state—while a receivership and distribution of assets to creditors or stockholders are incidental and contingent and may in fact never take place in any degree, then the "matter in dispute" does not seem to me to be pecuniary in its nature or measurable in any way in money.

In the case of *Lee v. Watson, 68 U. S. 337 (1864),* Mr. Justice Field says: "By matter in dispute is meant the subject of litigation—*the matter for which the suit is brought*—and upon which *issue is joined,* and in relation to which jurors are called and witnesses examined." The case was an action at law for damages. In an equity case the issue is presented by the pleadings and is decided in the decree. The pleadings and decree in

a suit under our statute, as we have seen, show that the issue is whether or not the defendant corporation is insolvent to such an extent that it is not about to resume its business "with safety to the public and advantage to the stockholders." "The matter for which the suit is brought," however, is not merely to establish such condition of insolvency, but to place the corporation under the disabilities of an injunction. A complete record of all the proceedings in the suit, prior to the decree and subsequent thereto, may fail to show that there were any assets or any receivership. The final decree necessarily only fixes the *status* of the corporation with respect to the exercise of its franchises. Even if the bill alleges that the defendant corporation has assets which exceed in value $2,000 and prays for a receiver, and the decree appoints a receiver, the receivership is not "*the* matter in dispute" in the suit; it is not a distinct juridical controversy capable of being litigated by itself in a separate suit as a separate object of contention between the parties. A separate suit cannot be maintained under our statute to effect the distribution of the assets of an insolvent corporation through a receiver. The suit, under our statute, must always be for an injunction, for a decree disabling the corporation from exercising its franchises. Practically, it would seem that the question whether a pecuniary controversy which is litigated in a suit, or a pecuniary result which flows from a suit, is or is not "the matter in dispute" in the suit, "the matter for which the suit is brought" would generally be tested by the question whether a separate suit could be maintained for the purpose of litigating this controversy. There are many matters which are disputed in actions at law and suits in equity which are altogether pecuniary in their nature and involve large sums of money and large values, but nevertheless they do not constitute *the* matter in dispute in the litigation, and no separate actions or suits might be maintainable for the determination of any of them.

The matter in dispute in a divorce suit is not pecuniary in its nature or estimable in money, although the bill may pray for alimony and the decree may award alimony. Neither the distribution of the assets of an insolvent corporation nor the allowance of alimony in a divorce suit can be made *the* matter in dis-

pute under the respective statutes upon which the proceedings are based.

The act of congress of August 13th, 1888 (*Sup. U. S. Rev. Stat. of 1888 vol. 1 p. 611*) contains the last revision of the provisions of the Judiciary act (*Rev. Stat.* § *629*) giving jurisdiction to the United States circuit courts in cases of diversity of citizenship. The phraseology of the statute is inapt and confused. Counsel for the defendants have not intimated that any change in the law upon the point under consideration in this case was intended. I have not found a decision of any court suggesting that any change in fact was made. Taking the words of the statute as they now read, and without reference to their history and prior use, in my opinion, the definition of Mr. Justice Field above quoted stands practically unaffected. There must still be found "a controversy" in which "*the* matter in dispute" exceeds in amount or value $2,000 in order to bring the suit at law or in equity within the jurisdiction of the federal court. This means, it seems to me, that there must be a complete legal controversy susceptible of being the object of a suit as distinguished from an incidental or collateral controversy arising in a suit brought for some other object.

In many jurisdictions declarations or complaints may contain many different counts or paragraphs setting up distinct causes of action of a widely different nature. The present case, however, is not one where the pecuniary controversy over the assets of the insolvent corporation can be made the subject of a separate suit under our statute, as we have seen.

It has not been suggested in this case that the object of our statutory action, so far as it relates to disabling and dissolving a corporation, can properly be deemed pecuniary in its nature. It has not been argued that the right of a corporation to exercise its franchises must be deemed to have a pecuniary value within the meaning of the federal Judiciary act. Without undertaking to discuss this subject, it may be disposed of for present purposes by the proposition that the right of the Asphalt Company of America—this hopelessly insolvent corporation—to exercise the franchises which it acquired under our General Corporation act, is apparently without any pecuniary value whatever and no

pecuniary value has' been attributed to it, either in the bill filed by the Land Title and Trust Company in the United States circuit court or in the bill filed in this case in this court.

In *Durham* v. *Seymour, 161 U. S. 235 (1895)*, the United States supreme court considered the essential nature of a suit in equity to authorize the United States commissioner of patents to issue a patent to the complainant. The court unanimously held that "the matter in dispute" was not pecuniary in its nature, notwithstanding that the patent, if obtained, might be worth a large sum of money. Chief-Justice Fuller says (at *p. 239*): "Whether the alleged invention was patentable or not was the question, and that question *had no relation to its value in money.* If the invention were not patentable, Durham [the appellant] had suffered no loss; if the invention were patentable, it was not material whether it had or had not a money value."

If a corporation is insolvent to the extent defined by our statute, it is not material whether it has or has not assets, or if it has assets, what their value may be; the suit proceeds to final decree in any case.

I cannot find that it was the intention of congress to give jurisdiction to the federal court to determine practically the continued existence of a New Jersey corporation merely because any stockholder or any creditor has been entrusted by the state with the power to bring this statutory action—what is practically an action of *quo warranto.* Chancellor Walworth, in one of the early cases under the New York statute upon which our act was modeled, holds that the statute gave to a stockholder the power to maintain an action "to enforce forfeiture of the franchises of the corporation." *Verplanck* v. *Mercantile Insurance Co., 2 Paige 438, 451 (1831).* This seems to me to be a substantially accurate statement of the object of the suit, of the matter in dispute between the parties litigant.

It may be worth while to note that if the accidental fact that one of the stockholders or one of the creditors of a New Jersey corporation is a citizen of another state gives the federal court jurisdiction of this New Jersey statutory action to determine the *status* of a New Jersey corporation, such jurisdiction would

be removed at any time whenever the legislature of New Jersey saw fit to confine the institution of the proceedings to the attorney-general of the state. Is it not plain that the real function of the suit under our statute is to accomplish an object which the state controls, and which the state has seen fit, as an exception to ordinary principles applicable to such cases, to permit a private individual, who has a special relation to the objects and results of the suit, to institute as effectually as ordinarily would be done by the attorney-general of the state?

If the view which I have expressed is erroneous, it follows that where the United States circuit court obtains jurisdiction of our statutory action by reason of diversity of citizenship, that court could control the existence of a New Jersey corporation, practically suspend its life by the injunction, which is the principal object of the suit, and then afterwards could restore it to life by vacating the injunction. The *status* of the corporation, the creature of the State of New Jersey, as existent or practically non-existent, is thus determined by the decree of the federal court.

It seems to me that there are more reasons for holding that the "matter in dispute'" in our statutory action against an insolvent corporation is not pecuniary or measurable in money, than to hold that the "matter in dispute" in guardianship proceedings, lunacy proceedings and similar proceedings against spendthrifts and drunkards, is not pecuniary in its nature. Counsel for the defendants in this case boldly declared that a citizen of New York, being, for instance, the son of a citizen of New Jersey, could maintain proceedings in the United States circuit court, based on this diversity of citizenship, to have the citizen of New Jersey adjudged a lunatic, provided the result of this adjudication would be to transfer property exceeding in value $2,000 from the lunatic to his guardian or committee. Not a decision was cited to sustain this proposition.

Let us suppose that the necessary changes in our legal system were made to permit the maintenance of a *quo warranto* action in the supreme court for the forfeiture of the franchises of a corporation, including, as an ancillary incident, a receivership for the distribution of the corporate assets, and let us further

suppose that this action were made maintainable by any stock-holder or any creditor. Precisely the same question might then arise in the supreme court which is now presented in the court of chancery, viz., whether the "matter in dispute" was the *status* of the corporation or the assets of the corporation. If the former, then the action would be confined to the supreme court of the State of New Jersey; if the latter, then any stockholder or creditor, being a citizen of another state, could bring the action in the United States circuit court and that court would have full jurisdiction.

Suppose a divorce suit is brought under a state statute, the husband and wife being citizens of different states. That such diversity of citizenship can exist at the present day is beyond argument. A husband and wife, in these days, may be voters and high office-holders in different states. If the wife brings the suit she may demand alimony exceeding $2,000; if the husband brings the suit the direct *result,* if he succeeds, may be to destroy an inchoate right of dower of a value far in excess of $2,000. Could, in such case, a federal court take jurisdiction of the whole divorce suit because of this *result,* which involved a property stake over $2,000 in value? When the husband brings a divorce suit against his wife "the matter for which the suit is brought and upon which issue is joined" is not the inchoate right of dower which the husband's suit, if successful, directly destroys. The right of dower, which may be worth many thousands of dollars, may supply the motive which actuates the suit or the defence. The preservation or de-struction of the dower right is a result, and only one result, as distinguished from the object of the suit. Another result is the continuance or the discharge of the husband's duty to support the wife, which may be of great pecuniary value.

The *status* of corporations, married persons, infants and lunatics has been carefully left by congress exclusively within the control of the state courts, although under the constitution congress plainly has the power to give the federal courts juris-diction of these matters wherever a "controversy" involving any of them of a kind to be a proper subject of "judicial power" arises between citizens of different states.

Gallagher *v.* Asphalt Co. of America.

I shall not, however, undertake to discuss this subject further. If I am in error, and the true construction of the federal Judiciary act and of our New Jersey Corporation act gives jurisdiction of our statutory action to disable and practically dissolve a corporation to the federal court, where the actor who institutes the proceedings is a citizen of another state, it is probable that before very long the federal judiciary will make a deliverance on the subject which will correct my mistake. In dealing with a question like this a state court can only determine what the federal courts have decided or conjecture as to what they probably will decide. In the absence of any controlling federal decision I cannot hold that a federal court which has jurisdiction, based on diversity of citizenship, to sequestrate and distribute the assets of a New Jersey insolvent corporation has also the power to act directly upon the very existence of the New Jersey corporation and exercise the important public function vested by our statute in the court of chancery and to be discharged by that court with the safety of the public in view.

The result, therefore, is that the motion to dismiss this bill is denied. The bill will be retained (in spite of the fact that all the assets of the corporation are in the possession of a receiver of the federal court, and at present there seems to be no reason why any receiver should be appointed by this court) for the accomplishment of the statutory object of the suit, which has no essential relation to the sequestration or distribution of assets.

At any time when assets may be discovered of which the receiver of the federal court has not taken possession, or which cannot be reached through him, it may be advantageous to the creditors to have a receiver appointed by this court. Of course, no receiver appointed by this court will raise any contest with the federal receiver over the administration of assets which the federal receiver is administering in execution of his trust.

Technically, the next thing in order would be the summary proceeding to ascertain whether the facts are proved which are required by our statute as the basis of a final decree that an injunction issue restraining the corporation from the exercise of

its franchises.   I shall, however, not hear that matter for a reasonable time, in order that if counsel for the defendant desire to carry the order of this court now to be made to the court of errors and appeals for review, they may have abundant opportunity to do so.