By a decree of this court, dated October 10th, 1928, The American Yard Mills, hereinafter referred to as the "Mills," was adjudged insolvent and complainant herein was appointed as its statutory receiver. He now brings this suit, the object of which is to have a payment of $3,000, made by the Mills to the defendant herein, declared to be invalid and the latter required to repay said sum to him for the benefit of the former's unpaid creditors. *Page 532 
The payment thus challenged was concededly made under these circumstances. The Mills was a depositor at the defendant bank, by which it was extended a direct credit line of $3,000 and $4,000 on its trade paper. On September 17th, 1928, the Mills had its promissory note for $3,000 discounted by defendant, utilizing the proceeds of said discount for the purpose of paying off $3,000 worth of its own notes and trade paper, some of which were not yet then due, and all of which defendant had previously discounted for it. On October 3d 1928, in accordance with its instructions and authorization from the Mills, defendant deducted from the latter's balance, then on deposit with it, the sum of $3,000 and applied same in payment of the $3,000 note which it had discounted for the Mills on September 17th, 1928, but which, according to its tenor, was not to become due until December 17th, 1928. After this transaction, the Mills was left with a net balance of $447.55, plus the sum of $37.50, rebated to it by defendant for the unearned interest on the note thus anticipated.
Complainant asserts that the payment thus made was of a preferential character and illegal, contending that it was made by the Mills while insolvent or in contemplation of insolvency, and by reason of which defendant should be compelled to repay same to him for the benefit of the latter's unpaid creditors.
Our courts have long recognized the rule that a corporation, whether insolvent or contemplating insolvency, aside from any statutory restrictions, is possessed of the same power and dominion over its assets, as is an insolvent natural person.Gallagher v. Asphalt Co., 65 N.J. Eq. 258. Our restrictive statute in this respect is section 64 of our Corporation act (2Comp. Stat. 1910 p. 1638), the provisions of which make utterly null and void, as against creditors, any transfers of corporate assets in contemplation of insolvency or whenever the corporation "shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, except that a bona fide
purchase, for a valuable consideration, before the corporation shall have actually suspended its ordinary *Page 533 
business, by any person without notice of such insolvency or of the sale being made in contemplation of insolvency shall not be invalidated or impeached."
The fact is here undisputed that the Mills, at the time of the making of the payment in controversy, had not suspended its ordinary business. Quite the contrary appears to be the fact, namely, that it continued, without interruption, to carry on and conduct its business right up until the appointment of the receiver. Hence, the issues here involved may, without more, be disposed of and determined by the answer to this inquiry: Did the Mills, while insolvent or in contemplation of insolvency, make the payment in question? If the answer be no, then the restrictive statute referred to can have no bearing or effect upon said transaction, and complainant's case must fail.
The evidence before me clearly establishes the fact, and fully satisfies me, that the payment in question was made at a time when the Mills was neither insolvent nor contemplating insolvency. The adjudicated cases in our state have all uniformly held that insolvency, as contemplated by section 64 of our Corporation act, exists whenever the corporation is confronted with a general inability to meet its pecuniary liabilities, as and when they mature, by means of either available assets or an honest use of its credit. Hoover Steel Ball Co. v. SchaferBall Bearing Co., 89 N.J. Eq. 433; Skirm v. Eastern RubberManufacturing Co., 57 N.J. Eq. 179; Schneider v. Hamilton TrustCo., 105 N.J. Eq. 377.
There is not a scintilla of evidence before me that the Mills on even a single instance or occasion had ever defaulted in the payment of any of its obligations upon maturity. The undisputed testimony discloses that it, by means of available cash or an honest use of its credit, always met its obligations when due, and on several occasions even anticipated them. Besides its stock in trade, it was possessed of bank balance of $3,447.55 on October 3d 1928, and against which there was outstanding not a single past or presently due obligation. While so financially circumstanced, the *Page 534 
$3,000 note in question was anticipated by it, after which there still remained on deposit to its credit a net balance of $447.55, and which balance, by subsequent deposits to its account, was on October 5th, 1927, augmented to $1,082.71, and on which day it did not have a single past or presently due obligation. Its business continued as usual right up to the appointment of the receiver. No circumstances appeared, nor was any proof offered, which might even so much as tend to indicate that the Mills, at the time of the payment in question, was insolvent, contemplating insolvency or a discontinuance of its business. All of the evidence clearly demonstrates and conclusively establishes the contrary.
Complainant stresses and seeks support for his case from the fact that the $3,000 was paid, although it was not yet then due. But it seems to me that he can find no legal comfort or support in that fact, especially in view of the undisputed evidence that the Mills had on several previous occasions anticipated the payment of its obligations to defendant. Nor can we overlook defendant's undisputed testimony that the Mills, having ample funds on hand, wanted to anticipate the note in question so as to save interest thereon and also for the purpose of clearing off its old obligations to defendant, preparatory to its seeking and receiving a new and larger line of credit from defendant, which the former's prospective associate in business was desirous of obtaining. There is nothing unusual or suspicious in such a transaction, especially in view of the foregoing, coupled with the fact, as testified to on behalf of defendant, that it was customary for any of its depositors, who sought a larger line of credit from it, to first pay off any obligations outstanding upon the old credit line.
I am fully satisfied from all of the evidence that complainant has clearly failed to establish his right to the relief sought, and I will, therefore, advise a decree dismissing the bill of complaint. *Page 535