### In re E. C. DENTON STORES CO.

### No. 3672.

District Court, S. D. Ohio, W. D.

Nov. 21, 1933.

Peck, Shaffer & Williams, of Cincinnati, Ohio, for preferred stockholders.

Albert Spievack, of Cincinnati, Ohio, for certain New York creditors.

Estabrook, Finn & McKee, of Dayton, Ohio, and Froome Morris, of Cincinnati, Ohio, for bankrupts.

Joseph Lackner, of Cincinnati, Ohio, for Fifth-Third Union Trust Co. of Cincinnati, Ohio.

Joseph W. Henderson, of Philadelphia, Pa., for City National Bank of Philadelphia, Pa.

Pogue, Hoffheimer & Pogue, of Cincinnati, Ohio, and Martin & Corry, of Springfield, Ohio, for receiver.

Edward B. Levy, of New York City, and Kusworm & Shaman, of Dayton, Ohio, for three credit insurance companies and creditors' committee of New York.

HOUGH, District Judge.

Prior to the 6th day of January, 1933, the E. C. Denton Stores Company operated a chain of retail merchandise stores—three in the Southern district of Ohio, one in the Eastern district of Kentucky, and one in the Western district of North Carolina. The business was conducted from the company's principal office at Springfield, Ohio, and E. C. Denton was the president of the corporation and the managing head of the business, and L. P. Ballinger was one of the directors of the corporation.

The bank at Springfield, with which the company did its business, called the company's loan and appropriated its deposit account. Thereupon other bank creditors took like action, and the company found itself without working capital to conduct its business. The company, through Denton and Ballinger, then procured a nonresident merchandise creditor to file a bill in equity in the United States District Court at Dayton, Ohio, seeking the appointment of receivers for the business, and the usual injunctive and equitable relief. After that consent had been obtained, Denton and Ballinger withdrew from the company's funds the sum of about $7,000, and paid that amount to a bank creditor, of a bank in which Ballinger was indirectly interested. The answer of the company was then prepared and sworn to, in which the allegations of the bill in equity were admitted to be true, and consent given to the appointment of receivers. Denton and Ballinger then resigned as directors. They then withdrew $500 from the funds of the company for expense money, and the next day, to wit, January 6, 1933, filed the bill in equity, paid the cost deposit for the plaintiff creditor, filed the answer, and appeared before the federal court on application for the appointment of receivers. Upon that application the court appointed Denton and Ballinger coreceivers, and Martin & Corey, the company's counsel, as attorneys for the receivers. Later, three creditors in substantial amount, filed application, which resulted in January 23d in the appointment of James B. Malone as coreceiver with Denton and Ballinger, and Pogue, Hoffheimer & Pogue were at that time or later appointed as attorneys for the receiver. Later, irregularities in respect to the preferential payment to the creditor bank of the $7,000, and withdrawing of the $500 as expense money, were called to the attention of the court, and a hearing was had, which resulted on the 10th day of March, 1933, in Denton and Ballinger choosing to resign. The transcript of this hearing discloses that this alternative was adopted by Denton and Ballinger, rather than the alternative of dis-

charge by the court, and the court accepted their resignation.

At the hearing of March 10th, Denton was represented by Froome Morris, counsel, and the shareholders of the corporation were represented by Floyd Williams, of the firm of Peck, Shaffer & Williams. Morris also at a later date represented the corporation, as did also the firm of Estabrook, Finn & McKee.

On the 17th of April, 1933, pursuant to a notice, a shareholders' meeting was called and held at a hotel in Cincinnati. Morris called this meeting to order, and asked nominations for chairman of the meeting. Ballinger nominated Denton, and Denton was elected. Denton reported to the meeting that an audit had been made, and that the company's assets amounted to $1,194,279, with liabilities of $496,164, or a net value of assets over liabilities of $698,115. Morris, speaking before the meeting at the request of Denton, said, among other things, in respect to the hearing of March 10th, that, as the matter proceeded, the attitude of the court became quite hostile, and that, after the hearing, a consultation was held, where it was decided that "we had got into the wrong fight," and that we should resign, which was done, and accepted by the court. The meeting resulted in the appointment of a committee to prepare a plan. Denton appointed Williams as one member of a committee of three. Five directors were elected at this meeting, one of which was Denton. At an adjourned meeting, held on April 24th, Williams reported for the committee, and as a part of his report offered a resolution, which was passed, authorizing the board of directors to take action in lifting the existing receivership, and, if in their opinion the interests of the creditors and stockholders best can be preserved by a proceeding in bankruptcy and by working out a reorganization of such company by such means, they (the directors) were authorized to file a voluntary petition in bankruptcy.

On the 26th of April, 1933, the company filed a voluntary petition in bankruptcy, being the instant case. Adjudication was entered as of course.

On May 2, 1933, the receiver and the City National Bank of Philadelphia, a creditor, made appearance in this case, and filed separate motions, that the court set aside, suspend, and hold for naught the adjudication in bankruptcy. The motions were similar and based on three grounds, namely, that the board of directors of the company were in contempt of court in filing the voluntary petition in bankruptcy, by reason of the general injunctions of the court in the order appointing the receiver; that the board of directors was estopped to file a voluntary petition in bankruptcy; and that the filing of the voluntary petition in bankruptcy is a fraud on the court. Thereupon, the court (Judge Nevin sitting) entered an order vacating the adjudication and continuing the receivership in the equity case until the determination of the issues raised by the two motions was had.

The motions were set for hearing at Dayton on May 15, 1933, before the other judge (Hough) of the district. After the motions had been set for hearing on May 15th, and with knowledge of that fact, and after closing time of the clerk's office, by special arrangement with the clerk by Mr. Finn, of the firm of Estabrook, Finn & McKee, one Spievack filed on the 6th of May, 1933, an involuntary petition in bankruptcy against this company on behalf of three merchandise creditors. The total indebtedness of the company to these three creditors was approximately $600.

The hearing on May 15th consumed the entire day with arguments and the taking of some testimony. Because of insufficiency of time, the court referred the taking of the testimony to a special master. Under this order interested counsel produced testimony for days, and accumulated reams of transcript, very little of which has any relevancy to the questions raised by the two motions. It did, however, disclose that there was a sharp controversy in respect to the method of administration, and the development of embittered feeling. After some time, the mass of testimony, copious briefs, counter briefs, and reply briefs, were submitted to the court.

At the suggestion of one of the counsel for the creditors' committee, a conference and hearing was arranged for October 16th, with a view of determining whether a common ground could be agreed upon between the contending parties, along some line which would permit and facilitate the early administration of the company's business. The creditors controlled by the creditor's committee presumably had nothing to say at the hearing, as counsel was not present. Neither did the hearing develop any common compromise basis, but only disclosed more or less unalterable disposition against compromise. And it was frankly stated by counsel for the stockholders, in effect, that the dispute was one over the control of the administration of the alleged bankrupt estate.

■■ Motions were filed in open court to strike the aforementioned motions of the re-

ceiver and the creditor from the files. The first question, then, is whether either or both may raise the questions contained in their respective motions. The receivership is an agency, and the receiver is an arm of the court; it is his right as well as his duty to thus raise such questions. In re Morosco Holding Co., Inc. (D. C.) 296 F. 516. The creditor, however, is in no position to join issue or raise the question of the right of the corporation directors to file the petition in bankruptcy, or the question of estoppel. Royal Indemnity Co. v. American Bond & Mortgage Co. (C. C. A.) 61 F.(2d) 875; Royal Indemnity Co. v. American Bond & Mortgage Co., 289 U. S. 165, 53 S. Ct. 551, 77 L. Ed. 1100. Whether or not such a creditor may raise the question of the right of the company to file a voluntary petition in bankruptcy because of fraud (query)? Inasmuch as that question is raised squarely by the receiver's motion, it will be unnecessary to decide whether the creditor might properly raise the same question.

■ The fact that a corporation requests, consents to, or participates in an equity receivership in respect to its corporate property, in which the usual injunction issued, will not of itself preclude the corporation subsequently to file a voluntary petition in bankruptcy. In re Watts & Sachs, 190 U. S. 1, 23 S. Ct. 718, 47 L. Ed. 933; In re Yaryan Naval Stores Co. (C. C. A. 6) 214 F. 563; Struthers Furnace Co. v. Grant (C. C. A. 6) 30 F.(2d) 576; In re Beaver Cotton Mills (D. C.) 275 F. 498. The Watts Case, supra, states the established law, that the bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked in the administration of the affairs of insolvent persons and corporations, is essentially exclusive. Nor as applied to voluntary bankruptcy, is the solvency or insolvency, as such, material. In re Duplex Radiator Company (D. C.) 142 F. 906; In re Dressler Producing Corporation (C. C. A.) 262 F. 257. Likewise, the doctrine of estoppel is not to be applied against a corporation which files a voluntary bankruptcy proceeding subsequent to its participation in an equity receivership, if its right to do so is not otherwise precluded. In re Wells (D. C. Southern Dist. of Ohio, Hickenlooper, Judge) 298 F. 109, 3 A. B. R. (N. S.) 26; Struthers Furnace Co. v. Grant (C. C. A. 6) 30 F.(2d) 576.

The third ground of the receiver's motion, namely, fraud claimed to be imputed to the corporation under the facts resulting in a fraud upon the court, is less simple of solution.

Counsel representing the stockholders and the corporation urge that, because the principles of law just discussed under the decisions sustain their position, there is a legal right to maintain a voluntary petition in bankruptcy, irrespective of solvency, motive, or course of conduct of the corporation or the members of its board of directors; that this legal right is one of which it may not be deprived, and the exercise of which the court is powerless to prevent.

■■ It must not be lost sight of that the administration of the bankruptcy law is an equitable proceeding, but bankruptcy is equity and to be exercised by the courts in the spirit of equity. Cunningham, Trustee of Ponzi, v. Brown, 265 U. S. 1, 44 S. Ct. 424, 68 L. Ed. 873; Orinico Iron Co. v. Metzel (C. C. A. 6) 230 F. 40, 46; Gadd v. Dawson (C. C. A.) 291 F. 327; Litzke v. Gregory (C. C. A.) 1 F.(2d) 112. And, furthermore, the power of a bankruptcy court, sitting as a court of equity, to vacate and set aside an adjudication in voluntary bankruptcy, is not open to successful contradiction. Struthers Furnace Co. v. Grant (C. C. A. 6) 30 F.(2d) 576; Zeitinger v. Hargadine-McKittrick Dry Goods Co. (C. C. A.) 244 F. 719; In re Associated Oil Co. (D. C.) 271 F. 788.

■■ The conduct of Denton, and to a somewhat lesser degree Ballinger, prior to and from the very inception of the receivership proceedings, was irregular. The plan was to divest themselves of official status, in order that they might go before the court on an application to be appointed receivers, and thus continue control. The illegal payment to the bank creditor by withdrawing funds from the corporation treasury, and also the withdrawal of $500 for expense money, at a time when neither had any connection with the corporation, were fraudulent acts. And when it became imminent that they were to be discharged as receivers because of those acts, they chose to resign rather than be discharged. Thereafter, Denton employed other counsel, and through his efforts and Ballinger's the meeting of stockholders was arranged. The reading of the record of the proceedings of that meeting, and the one that followed, discloses that the actions taken by the stockholders were in conformity to a plan or scheme that had been decided upon in advance, the manifest purpose of which was to circumvent the control of the receiver and the orders of the court, a circumvention in the nature of reprisals, and to again obtain at least temporary control of the receivership estate. The expressed motives for the action were to fa--

cilitate a financial reorganization of the company, and to divest the company of liability under improvident leases. These reasons are not persuasive, because the court and the receiver were at all times ready to lend their influence in accomplishing either or both of such ends. The plan advanced worked successfully. Denton was re-established as director of the corporation, and the corporation was authorized to file a voluntary petition in bankruptcy. The claim that the court was hostile (which claim as the record shows was without merit) and the conclusion urged upon the stockholders that the company had been in the wrong fight prevailed, and the stockholders, no doubt innocently and probably without full knowledge of the exact situation, gave their affirmation to the carrying out of the plan, so that the action of the stockholders in authorizing the board of directors and the action of the board of directors in filing the petition in bankruptcy were constructively fraudulent. Denton and Ballinger planned the procedure for the reasons above stated, and procured the results. They do not come into the court of equity with clean hands, and their manipulations have tainted the corporate action. A court of equity will look through form to find substance, and the substance here is that the corporation did not come into equity with clean hands. Bentley v. Tibbals (C. C. A.) 223 F. 247; Primeau v. Granfield (C. C. A.) 193 F. 911; Hamilton National Bank v. McCallum (C. C. A.) 58 F.(2d) 912, 913.

The principle of law that seems to the court to govern in this instance is laid down in the case of Zeitinger v. Hargadine-McKittrick Dry Goods Co. (C. C. A.) 244 F. 719 (245 U. S. 667, 38 S. Ct. 64, 62 L. Ed. 538, certiorari denied), where the court said on page 723: "The District Judge, in adjudicating upon a voluntary petition in bankruptcy, is not a ministerial, but a judicial, officer, whose first duty is to see that those who minister in the temple of justice shall not invoke his authority for the accomplishment of a fraud." The bankruptcy law under the facts and circumstances before the court in this case was not "properly invoked," as required in the Watts Case. In re Watts & Sachs, 190 U. S. 1, 23 S. Ct. 718, 47 L. Ed. 933. The third ground of the receiver's motion is therefore sustained, and, the court having heretofore entered an order of vacation of the adjudication, there only remains to dismiss the voluntary petition in bankruptcy. It is so ordered.

The involuntary petition in bankruptcy, which is pending, and to which the company did not file an answer, the only answer being that filed by the receiver, and under the present state of the record, wherein it appears that the assets of the company are of the value of something like one and a half million dollars, as against liabilities of around half a million dollars, that petition should also be dismissed. It is so ordered. If it is desirable, counsel on either side may submit proposed findings of fact to the court for approval.