In re DISTILLERS FACTORS CORP.

No. 10274.

United States Court of Appeals
Third Circuit.

Argued Nov. 9, 1950.

Decided March 14, 1951.

Max L. Rosenstein, Newark, N.J., Archibald Palmer, New York City, for petitioner.

Daniel G. Kasen, Newark, N.J. (Kasen, Schnitzer & Kasen, Newark, N.J., on the brief), for respondent.

Before GOODRICH, KALODNER, and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This appeal is from an order of the United States District Court for the District of New Jersey dismissing *sua sponte* appellant's petition for an arrangement under Chapter XI of the Bankruptcy Act.

Appellant is a New Jersey corporation. For more than one hundred years, New Jersey has provided a statutory proceeding in the interest of creditors, stockholders, and the public at large, whereby a corporation may be disabled from exercising its franchise upon a showing that the corporate privileges which the state has granted are being abused.[1] On November 27, 1947, a creditor filed against the appellant in a competent New Jersey court a complaint alleging, among other things, that the business of the appellant was dominated by its president, Harry J. Weiner, who, together with his wife and the company's bookkeeper, constituted its board of directors; that Weiner had been convicted of a federal crime and sentenced to six months imprisonment as a result of his administration of the corporation; that Weiner "has in recent years been instrumental in organizing many corporations and has operated several of them in such a way that bankruptcy or receivership was the fate of said enterprises with great losses to the creditors"; that the affairs of this corporation had been so conducted as to cause it to become insolvent, and that the continuation of the course of operations would be prejudicial to the public and detrimental to creditors. After hearing, the court found that appellant was insolvent; that its business had been conducted to the prejudice and detriment of creditors and stockholders; and that the continuation of its course would be unsafe for the public and for those who had invested in it. Thereupon, the court enjoined further exercise of the corporate franchise and any action on behalf of the corporation by its officers or agents. In addition, the court appointed a statutory receiver and transferred title to all corporate property and assets to him with authority to administer and settle the affairs of the enterprise. This procedure was in accordance with the provisions of the New Jersey statute and may lead, within the discretion of the court, to the involuntary dissolution of the corporation.[2]

The statutory receiver proceeded with his duties including the institution of legal proceedings to recover on certain claims. At the end of November 1949, his efforts were about to result in a recovery of $50,000 on an agreed settlement of litigation which he had instituted. However, a few days after judicial approval of the proposed settlement, the present petition for ar-

---

1. N.J.S.A., Title 14, Chapter 14, Sections 3–10; originally, "An Act to prevent frauds by incorporated companies", Laws 1828–9, pages 58 ff.

2. To warrant dissolution of the company . . . the complainant must charge and "adequately establish the three essentially jurisdictional facts: (1) Defendant's business *has been* conducted prejudicially and at great loss; (2) it *is being* so con-

ducted; and (3) the defendant's business *cannot be* conducted in the future with safety to the public and advantage to the stockholders." Neff v. Progress Building Materials Co., 1947, 139 N.J.Eq. 356, 358, 51 A.2d 443, 444; Laredef Corp. v. Federal Seaboard Terra Cotta Corp., 1942, 131 N.J.Eq. 368, 370, 25 A.2d 433, 436.

rangement was filed in the district court by Harry J. Weiner as president of the appellant in its name and behalf. The petition revealed on its face that the petitioner lacked detailed information concerning the current status of the business, that the proposed arrangement was dependent on the realization of substantial sums from pending litigation, and that a purpose of the petitioner was to block the particular settlement then about to be consummated.

The petition for arrangement was filed December 8, 1949, two years after the appointment of the New Jersey statutory receiver. A general reference was made to a referee in bankruptcy. The referee decided that the possession of the New Jersey statutory receiver, who had qualified more than four months before the institution of the present suit, should not be disturbed. The case was then certified back to the district court for review of this decision. After hearing, the court in a single order sustained the referee's conclusion and, on its own motion, dismissed the petition for arrangement.

The power of the district court to compel the state receiver to deliver assets to the bankruptcy trustee is dependent on Section 2, sub. a (21) of the Bankruptcy Act.[3] This section explicitly prohibits supersession of the possession of such receivers "except in proceedings under chapters 10 and 12 * * * if the receiver or trustee was appointed · * * * more than four months prior to the date of bankruptcy". Appellant has sought to avoid the impact of this provision by claiming automatic supersession regardless of the passage of time on the theory that the New Jersey statute is in the nature of a bankruptcy act and thus to some extent invalid. However, in his reply brief, appellant concedes that the claimed infirmity is not such as to make the New Jersey statute void and that proceedings under it are legally effective, at least until bankruptcy proceedings are instituted.

■ Uncertainty has been introduced into this area of the law by indiscriminate language about "state laws tantamount to bankruptcy". It is not necessary for us to thoroughly analyze the meaning of those words. It is not even necessary to posit decision on the fact that the principal hallmark of bankruptcy legislation has been taken to be the discharge of debts, so that the bankrupt can begin afresh, whereas, in the case before us for reasons sufficient unto New Jersey, the debtor may be put to death, but certainly not given a new and debt free lease on life. For this case, emphasis more properly rests on the early and consistent recognition that the basic impropriety to be avoided in state insolvency legislation is interference with the orderly administration of the constitutionally authorized uniform national bankruptcy laws. See Sturges v. Crowinshield, 1819, 4 Wheat. 122, 196, 4 L.Ed. 529; Stellwagen v. Clum, 1917, 245 U.S. 605, 615, 38 S.Ct. 215, 62 L.Ed. 507; Chicago Title & Trust Co. v. Forty One Thirty Six Wilcox Bldg. Corp., 1937, 302 U.S. 120, 126, 58 S.Ct. 125, 82 L.Ed. 147. Evaluation of such interference rests in large part on the scope Congress itself has indicated for the operation of its own bankruptcy legislation. The language of Section 2, sub. a (21) leaves little doubt that a non-bankruptcy receivership valid in its inception and of more than four months' duration, whatever its character, is to be tolerated where the federal relief sought is an arrangement.

■ Moreover, with respect to the propriety and validity of the New Jersey statute, the New Jersey courts have repeatedly pointed out that the design of its statutory proceeding is to employ the authority of the state to impose upon its creature disabilities appropriate to the abuse of corporate privileges. The corporation act, as originally enacted in 1829 and as amended and presently in force, contemplates a proceeding in the nature of *quo warranto*, the direct object of which is to procure a forfeiture of the corporate franchise. An injunction for the prevention of fraud on creditors, stockholders and the public at large is the principal relief afforded and the appointment of a receiver in the discretion of the court is an an-

---

3. 52 Stat. 844 (1938), 11 U.S.C.A. § 11, sub. a(21).

cillary measure available under the original and present statutes. Gallagher v. Asphalt Co. of America, 1903, 65 N.J.Eq. 258, 55 A. 259; Pierce v. Old Dominion Copper Mining & Smelting Co., 1904, 67 N.J.Eq. 399, 58 A. 319; Laredef Corp. v. Federal Seaboard Terra Cotta Corp., 1942, 131 N.J.Eq. 368, 25 A.2d 433. The New Jersey equity court has explained: "The decree itself is that the corporation shall be enjoined from the exercise of its franchise. That is the decree. It is often said that our *statutory suit is a proceeding in rem*—that the status of the corporation is permanently fixed by this decree. True enough. But the status is not the status of a corporation as insolvent. It is the status of a corporation with respect to the exercise of its franchises. * * * This status corresponds very nearly with that which is established by the ordinary decree or order in the case of proceedings de lunatico inquirendo, or *in relation to drunkards*, spendthrifts, etc., which result in placing a natural person under disabilities. This decree under our statute places the corporation under disabilities, and that is the direct object of the suit * * *." See Gallagher v. Asphalt Co. of America, supra, 65 N.J.Eq. at p. 277, 55 A. at page 266. It is the special province of the state thus to inhibit, and if necessary destroy, a legal personality of its own creation.

Thus, beyond its failure to effect a debtor's discharge, this New Jersey legislation operates so differently in theory and in practice from a Bankruptcy Act arrangement as to avoid even any serious question of invalidating conflict. Compare the Sturges, Stellwagen and Wilcox cases, cited above.

But the district court did more than deny access to assets in the hands of the state receiver. It dismissed the petition, even though it had not been asked to do so.[4] It did so on the ground that having denied right to the books, records, and property, further "retention of jurisdiction * * * would be confusing and detrimental to the best interests of creditors and others involved in the proceedings." If the only possible result of the New Jersey proceeding were corporate death, the propriety of the district court's order would probably be unquestioned. Cf. Chicago Title and Trust Co. v. Forty one Thirty six Wilcox Bldg. Corp., supra. However, such death has not been decreed nor is there any guarantee that it will be. Nonetheless, we think the decision of the district court was correct. The situation which confronted the court on appeal from the referee's ruling raised a substantial question whether jurisdiction should be retained and called for the resolution of that issue through the exercise of discretion governed by equitable principles.

In Securities and Exchange Commission v. United States Realty & Improvement Co., 1940, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, the Supreme Court pointed out and emphasized the equitable and discretionary character of the jurisdiction of a court of bankruptcy when asked to provide relief by voluntary arrangement under Chapter XI. It was there observed that a court of equitable jurisdiction "may in the public interest, even withhold relief altogether, and it would seem that it is bound to stay its hand in the public interest when it reasonably appears that private right will not suffer." 310 U.S. at 455, 60 S.Ct. at page 1053. Support for this position was drawn from Com. of Pennsylvania v. Williams, 1935, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841, which originated in this circuit. In that case, the Supreme Court considered rival undertakings of a United States court of competent jurisdiction and a competent agency of the State of Pennsylvania to deal with the liquidation of the business of an insolvent Pennsylvania corporation. The Court enjoined deference to the state in this matter of its domestic corporation except insofar as it should appear that interests entitled to protection would not be adequately protected by state procedure. Although the Williams case did not involve bankruptcy, we read the Realty & Improvement Co. case, supra, as

4. In proper cases bankruptcy courts dismiss proceedings *sua sponte*. Mecca Temple etc. v. Darrock, 2 Cir., 1944, 142 F.2d 869; In re Carneau, 7 Cir., 1904, 127 F. 677.

saying that similar considerations are relevant and should be weighed by a court of bankruptcy in determining whether jurisdiction should be retained over a petition for arrangement under Chapter XI.

The pending state proceeding revealed matters relevant to the exercise of the discretion of the bankruptcy court. It has frequently been pointed out that the mere fact of a preexisting equity receivership of a debtor corporation does not prevent the retention of bankruptcy jurisdiction.[5] But the New Jersey proceeding was not merely an equity receivership although it exhibited some similarity of incidents. As we have already pointed out, the New Jersey proceeding was essentially a weapon to prevent and curb abuses by creatures of the state. If in many cases of this type the state must yield to the superior authority and national concern represented by bankruptcy jurisdiction,[6] there remain situations where the special interest of the state in its corporate creatures is a factor properly to be considered by a bankruptcy court in balancing the equities of a case before it.

But beyond such advertence to the general nature of the state proceeding, the specific complaint against the appellant in the state court and the action taken thereon are to be considered. It had been alleged under oath that Weiner, as president and controlling personality on the board of directors, dominated the corporation; that he had set up and wrecked other corporate enterprises; that a similar course was being pursued here; that Weiner had been convicted of a federal crime in the conduct of the company's affairs, and that the continuation of such control would not be in the public interest. While the findings of the New Jersey court are not detailed, they, together with the action taken, sufficiently indicate the conclusion of the New Jersey court that the complaint was well founded.

Now, two years after Weiner had been deprived of all participation in the affairs of the corporation, with a statutory receiver moving almost to the point of realizing a substantial sum for the benefit of the corporation and with creditors apparently satisfied with the progress of litigation, Weiner, in the name of the corporation, has sought to invoke the procedure of voluntary arrangement under Chapter XI to frustrate the efforts in progress and to redirect the course of business administration in accordance with his present plans and proposals. To say, as appellant urges, that the district court should be required to let him do so, is to ignore both the history of the enterprise and the equitable character of the tribunal. In passing, it is to be noted that it is difficult to see how, after two years separation from the affairs of the corporation, Weiner would even have sufficient knowledge of the status of the business to make such a meaningful and considered proposal of arrangement as Chapter XI is designed to permit and encourage.

We think these circumstances suffice to place the district court's dismissal within the area of permissible exercise of judicial discretion. And, although such discretion is exercised and reviewed in the light of the particular circumstances of the individual case, it is significant that in other cases, courts of bankruptcy have refused to permit persons who have wilfully misconducted a corporate enterprise to use voluntary bankruptcy to create a situation apparently deemed more favorable to their interests than state receiverships already established.[7] Such considerations must be particularly persuasive where the petition seeks a Chapter XI arrangement in which the initiative and influence of management

5. E. g., Struthers Furnace Co. v. Grant, 6 Cir., 1929, 30 F.2d 576; In re Dressler Producing Corp., 2 Cir., 1919, 262 F. 257.

6. Cf. In re Bankshares Corporation of the United States, 2 Cir., 1931, 50 F.2d 94.

7. Zeilinger v. Hargadine-McKettrick Dry Goods Co., 8 Cir., 1917, 244 F. 719; In re Felder, D.C.E.D.S.C.1941, 39 F.Supp. 453; In re E. C. Denton Stores Co., D.C.S.D.Ohio 1933, 5 F.Supp. 307.

are likely to be more substantial and judicial control less detailed than in bankruptcy proceedings under other chapters.[8]

For the reasons above stated, the judgment of the District Court will be affirmed.

---

**8.** See Securities and Exchange Commission v. United States Realty & Improvement Co., supra, 310 U.S. at pages 450–451, 60 S.Ct. 1044, 84 L.Ed. 1293.