**In re DONALDSON FORD, INC. dba Ray Hughes Ford, Debtor.**

**Bankruptcy No. 82–00221.**

United States Bankruptcy Court,
N. D. Ohio, W. D.

April 13, 1982.

426

Burton A. Kalniz, Toledo, Ohio, William Lukens, Cleveland, Ohio, for debtor.

Jim A. Miller, Toledo, Ohio, for Donaldson Ford, Inc., d/b/a Ray Hughes Ford by and through its receiver and manager.

Thomas S. Zaremba, Toledo, Ohio, for Donaldson Ford, Inc., d/b/a Ray Hughes Ford by and through its receiver and manager and for Wilbur Donaldson.

Joseph D. Shibley, Toledo, Ohio, for Wilbur Donaldson, a shareholder of Donaldson Ford, Inc., d/b/a Ray Hughes Ford.

Ralph DeNune, III, Toledo, Ohio, receiver.

MEMORANDUM AND ORDER DENY-
ING MOTION TO DISMISS

WALTER J. KRASNIEWSKI, Bankrupt-
cy Judge.

This matter is before the Court upon the motion of Wilbur Donaldson and Ralph DeNune, III, Receiver, (Movants) to dismiss the Debtor's voluntary petition under Chapter 11 of the Bankruptcy Code as having been illegally filed in contravention of an order of the Common Pleas Court of Lucas County, Ohio. Alternatively, Movants invoke this Court's power under 11 U.S.C. § 305 to abstain from asserting jurisdiction over this matter. Considering the stipulations of fact submitted to the Court, the memoranda of law in support of and in opposition to the motion to dismiss, and this Court's own review of the controlling precedent in this circuit, it is the opinion of this Court that the motion should be overruled.

This case was initiated by the filing of a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on February 5, 1982. The petition was filed by Ray G. Hughes, the 51% shareholder, President, and member of the board of directors of the Debtor, an automobile dealership, pursuant to a resolution adopted at a "Special Meeting of the Board of Directors" on February 3, 1982. On February 9, 1982 Wilbur Donaldson, as the 49% shareholder and manager of the Debtor appointed pursuant to an order of the Common Pleas Court of Lucas County, Ohio in Case No. 81–01850 and Ralph DeNune, III, Receiver appointed in that same action, filed the present motion to dismiss the petition.

The motion to dismiss raises two main issues:

1. The extent of the authority, if any, remaining in the directors and officers of a corporation to act on behalf of the company in authorizing and filing a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code subsequent to the issuance of a blanket receivership injunction; and

2. Whether this Court should dismiss the petition as not being in the best interests of the creditors and the Debtor under § 305 of the Bankruptcy Code

FACTUAL BACKGROUND

On July 27, 1981 Wilbur Donaldson filed an action in the Common Pleas Court of Lucas County, Ohio [hereinafter "state court"]. Named as defendants in that action are Donaldson Ford, Inc., dba Ray Hughes Ford, Ray G. Hughes, and certain other officers and directors of the Debtor. The complaint seeks to recover from the defendants therein for certain alleged acts of conversion in breach of their fiduciary duty to the company, to recover assets of the company assertedly diverted to others, and for mismanagement of the affairs of the company and wasting of assets. Among the types of relief sought in that action were injunctive relief against the asserted harmful actions of defendants therein and appointment of a receiver to take over operations of the Debtor.

After hearing testimony on December 29 and 30 of 1981, on February 2, 1982, the state court made the following findings of fact:

1. that Defendants, Ray G. Hughes and Michael Horvath, are actually engaged in committing and will continue to commit acts hereinafter set forth, to the irreparable injury, loss and damage of the Plaintiff, Wilbur M. Donaldson, and to Donaldson Ford, Inc., d/b/a Ray Hughes Ford;

2. that Donaldson Ford, Inc., d/b/a Ray Hughes Ford is a Delaware corporation in which Defendant, Ray G. Hughes, is the owner of fifty-one percent (51%) of the outstanding common stock and Plaintiff, Wilbur M. Donaldson is the owner of forty-nine percent (49%) of the outstanding common stock, that Ray G. Hughes and Michael Horvath are directors and officers of Donaldson Ford, Inc.;

3. that Donaldson Ford, Inc. is insolvent or is in immenent danger of becoming insolvent;

4. that said plaintiff's motion for a preliminary injunction and the appointment of a receiver should be granted as necessary for the protection and preservation of the rights of the plaintiff and Donaldson Ford, Inc.

The court issued the typical "blanket receivership injunction", see generally Jordon v. Independent Energy Corporation, 446 F.Supp. 516 (N.D.Tex.1978), enjoining all persons "from in any way disturbing possession of the receiver and from prosecuting any actions which affect any of the property of said [company], real or personal." Also enjoined were certain actions of the corporate officers and directors relating to their handling of advertising commissions, and the sale of insurance policies, warranty contracts, and materials or services to any customers of the company. Finally, Ralph DeNune, III, one of the Movants herein was appointed as receiver and given certain powers and authorities relating to the conduct of the Debtor's business.

Notwithstanding the state court order, on February 3, 1982 a "Special Meeting of the Board of Directors" was convened. It was resolved that it was in the best interests of the Debtor to file a petition for reorganization under Chapter 11 of the Bankruptcy Code, and that the officers of the Debtor would make the requisite filings to initiate a case. No authorization was sought, nor has any ever been given, from either the state court or its receiver to initiate the Chapter 11 filing.

### EFFECT OF THE INJUNCTION

The thrust of Movants' argument in support of dismissal is that the meeting of the Debtor's Board of Directors authorizing the filing of the voluntary petition and the actual filing of the petition by Ray G. Hughes were in direct contravention to the blanket receivership injunction issued by the state court, and that, therefore, there being no valid authority on the part of the directors and officers to act on behalf of the Debtor, the petition should be dismissed.

Relying on In re Joseph Feld & Co., 38 F.Supp. 506 (D.N.J.1941), Movants contend that the resolution authorizing the petition passed at the "Special Meeting of the Board of Directors" on February 3, 1982 was invalid as based on an illegal meeting requiring this Court to decline jurisdiction. Citing Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corporation, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937), Movants contend, state rather than federal law controls, in the first instance, to determine the capacity of a corporation to avail itself of the benefits of the Bankruptcy Code. This capacity, Movants argue, was lost as a result of the state court injunction, rendering the filing ineffectual.

The Court finds both cases inapposite under the circumstances of this case. In In re Joseph Feld & Co., 38 F.Supp. at 507, the court declined jurisdiction of a voluntary petition in bankruptcy since the meeting of the board of directors authorizing the institution of bankruptcy proceedings did not comport with local law. New Jersey law required due notice to all directors of the time, place and object of a meeting, absent waiver. Since one of the three directors of the corporation neither attended the meeting authorizing the petition, nor was notified of it, the resolution was invalid.

Chicago Title and Trust Co., 302 U.S. at 126, 58 S.Ct. at 127 held that a corporation which had been validly dissolved under the laws of the state which created it could not seek reorganization under § 77B of the Bankruptcy Act.

The record in this case reveals no deficiencies relating to insufficient notice to directors of the meeting authorizing the filing of the petition under Chapter 11, nor has there been any dissolution of the corporation herein involved. Movants' reliance on the above authority in support of their motion for dismissal, then, is misplaced. Furthermore, a close review of a line of cases decided in this circuit under the Bankruptcy Act of 1898 convinces this Court that the motion to dismiss should be overruled.

It has generally been held in this circuit that the pendency of an equity receivership will not ordinarily prevent a corporation

from filing a voluntary petition in bankruptcy. *In re Yaryan Naval Stores Co.*, 214 F. 563 (6th Cir. 1914); *Struthers Furnace Co. v. Grant*, 30 F.2d 576 (6th Cir. 1929); *Muffler v. Petticrew Real Estate Co.*, 132 F.2d 479 (6th Cir.), *cert. denied* 319 U.S. 766, 63 S.Ct. 1329, 87 L.Ed. 1715 (1943). *Accord, In re Prudence Co.*, 79 F.2d 77 (2nd Cir.) *cert. denied* 296 U.S. 646, 56 S.Ct. 248, 80 L.Ed. 459 (1935); *Union National Bank v. Lehmann-Higginson Grocer Co.*, 82 F.2d 969 (10th Cir. 1936). *See also*, 1 *Collier on Bankruptcy*, ¶ 4.05[1] (14th Ed. 1976). The only recognized exception to this rule exists in cases which hold that an adjudication pursuant to a voluntary petition may be vacated for fraud. *See, e.g., Zeitinger v. Hargadine-McKittrick Dry Goods Co.*, 244 F. 719 (8th Cir.) *cert. denied* 245 U.S. 667, 38 S.Ct. 64, 62 L.Ed. 538 (1917); *Struthers Furnace Co. v. Grant*, 30 F.2d 576 (6th Cir. 1929); *In re E. C. Denton Stores Co.*, 5 F.Supp. 307 (S.D.Ohio 1933); *In re Denton & Haskins Music Publishing Co.*, 10 F.Supp. 802 (S.D.N.Y.1935).

Thus, in *Yaryan Naval Stores*, 214 F. at 563, the Yaryan Naval Stores Company was an Ohio corporation having factories and places of business in Georgia and Mississippi. As a result of a creditors' suit in the United States District Court for the Southern District of Georgia, receivers were appointed and took possession of the corporation's property in both states. In addition to the usual order requiring the turn over of property to the receiver and authorizing the receiver to operate the business, the Court issued the typical blanket receivership injunction enjoining

> the defendant company and its officers, directors, agents and employees and all other persons claiming to act by, through, or under said company, and all creditors and persons whomsoever, from interfering or attempting to interfere in any manner whatsoever with the possession, use, operation, or control of any part of said property, or interfering in any way so as to prevent the discharge of the duties of said receivers or the operation of said property, * * * and from instituting or prosecuting any actions, suits or proceedings against the defendant, the Yaryan Naval Stores Company, or any action, suits, or proceedings affecting any property in which the Yaryan Naval Stores Company is interested, without the order and permission of this court.

214 F. at 563–564. After the filing of an involuntary petition in the United States District Court for the Northern District of Ohio by three unsecured creditors, and the company's admission of its inability to pay its debts, the company was adjudged a bankrupt. The receivers and certain opposing creditors filed objections to the order of adjudication on the grounds that the petition and amendments, the corporate resolution admitting the company's inability to pay its debts, and other pleadings therein were in violation of the injunction of the District Court of Georgia, and therefore null and void. To this the court responded as follows:

> The unsoundness of this contention is declared and demonstrated by the plain and positive provisions of the Bankruptcy Act itself. Section 4 thereof provides that:
>
> 'Any [every] person * * * shall be entitled to the benefits of this act as a voluntary bankrupt' and 'any [every] natural person * * * and any [every] moneyed, business, or commercial corporation, * * * owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act.'
>
> This language is so broad and comprehensive as to be all-embracing and all-inclusive. It clearly manifests the intention of Congress to confer the rights and privileges of the Bankruptcy Act upon all persons and all corporations except those expressly exempted from its operation. Rights and privileges so positively bestowed cannot be destroyed, denied, or abridged by any power save that which created and brought them into being. Nor, in the absence of specific declaration, will it be presumed that any court

intends to make an order which must be ineffective because in direct conflict with the legislative will and mandate.

The settled rule is that the jurisdiction of the courts in bankruptcy in the administration of the affairs of insolvent persons and corporations is exclusive and paramount. *In re Watts & Sachs*, 190 U.S. 1, 23 Sup.Ct. 718, 47 L.Ed. 933; *Acme Harvester Co. v. Beekman Lumber Co.*, 222 U.S. 300, 32 Sup.Ct. 96, 56 L.Ed. 208; *United States Fidelity & Guarantee Co. v. Bray*, 225 U.S. 205, 32 Sup.Ct. 620, 56 L.Ed. 1055; *Leidigh Carriage Co. v. Stengel* (C.C.A.6) 95 Fed. 637, 37 C.C.A. 210.

In the present case, the Naval Stores Company had the undeniable right to go into voluntary bankruptcy, and to take any legitimate steps to bring about that result, and to obtain for itself and its creditors the benefits of the Bankruptcy Act. The petitioning creditors were also clearly within their rights when they applied for and obtained from the court having jurisdiction an order adjudging the company a bankrupt. Indeed, upon the showing made, the court of bankruptcy could not have denied the relief which it alone had jurisdiction and authority to grant.

In the appointment of the receivers and the issuance of the injunction, the powers of the court in Georgia were likewise properly exercised. There the solvency of the company was averred and admitted. The necessary element of involuntary bankruptcy was wanting. Only a court of equity could give the desired relief. But the order of that court must be read and interpreted in the light of, and in connection with, the relevant and explicit provisions of the controlling act of Congress. When so read and interpreted, it contains nothing which indicates an intention to prohibit a due application being made to the appropriate bankruptcy court, or the exercise by the latter court of its special jurisdiction and powers, whenever the requisite statutory conditions might be found to exist.

214 F. at 564–565. In sum, the typical blanket receivership injunction although construed in *Yaryan Naval Stores* not to, by its terms, prevent a voluntary or involuntary filing, was held to be ineffective to prevent a filing by those who had the right to file under the Bankruptcy Act.

*Yaryan Naval Stores*, on its facts, dealt with the question of the right to file a voluntary or involuntary petition when a federal blanket receivership injunction was in existence. In *Struthers Furnace Co. v. Grant*, 30 F.2d 576 (6th Cir. 1929), the right to file a voluntary bankruptcy notwithstanding a *state* blanket receivership injunction was recognized, and in *Muffler v. Petticrew Real Estate Co.*, 132 F.2d 479 (6th Cir.), *cert. denied* 319 U.S. 766, 63 S.Ct. 1329, 87 L.Ed. 1715 (1943) this view was followed subsequent to the enactment of the Chandler Act in the context of a corporate reorganization proceeding. Furthermore, in *Merritt v. Mt. Forest Fur Farms of America, Inc.*, 103 F.2d 69, 71 (6th Cir.), *cert. denied* 308 U.S. 583, 60 S.Ct. 105, 84 L.Ed. 488 (1939) an order ancillary to a state court receivership proceeding specifically restraining a corporate debtor, its stockholders, officers, directors, and stockholders committee from instituting a reorganization proceeding without the court's consent was held to be an erroneous deprivation of a constitutional right to relief under § 77B of the Bankruptcy Act. Thus, what *Yaryan Naval Stores*, by interpreting the restraining order therein to contain nothing to indicate an intention to prohibit a filing under the appropriate provision of the Bankruptcy Act, avoided, by principles of statutory construction, *Mt. Forest Fur Farms* made clear. The inability of a state or federal court to enjoin the filing of a voluntary or involuntary petition under the Bankruptcy Act derives from the Debtor's constitutional right to seek relief in the federal courts under the provisions of the Bankruptcy Act. *Accord In re Pine Tree Feed Co.*, 112 F.Supp. 124 (D.Me.1953). *But cf. Jordan v. Independent Energy Corporation*, 446 F.Supp. 516 (N.D.Tex.1978) (Federal district court may theoretically restrain voluntary or involuntary access to bank-

ruptcy court by issuing a blanket receivership injunction but preliminary injunction limiting access to bankruptcy courts would cause irreparable harm to debtor and creditors, not in public interest, and would be lifted).

■ The Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2549 (1978) (the "Bankruptcy Code"), contains nothing in its provisions or in its legislative history to evidence an intention of Congress relating to the question of the authority of corporate directors and officers to act on behalf of a debtor notwithstanding a state blanket receivership injunction, to change the law as interpreted in the Bankruptcy Act of 1898. In *Yaryan Naval Stores*, 214 F. at 565 the Sixth Circuit relied on the broad language of the Bankruptcy Act in §§ 4(a) and (b) [11 U.S.C. § 22(a)(b)], defining who may become bankrupts, in making its determination that bankrupt therein had an undeniable right to go into voluntary bankruptcy notwithstanding the injunction issued by the federal district court. Nor did the court in *Muffler v. Petticrew*, 132 F.2d at 481, find anything in the provisions of The Chandler Act of 1938 to change their interpretation relating to the right of a corporation to effect a reorganization. Similarly, this Court can find nothing in the provisions of the Bankruptcy Code dealing with who may become a debtor, 11 U.S.C. § 109, or turnover of property by a custodian, 11 U.S.C. § 543, which would evidence an intention to change this position. It is the conclusion of this Court then, that the injunction in issue was ineffective to prohibit the Debtor in this case, through its officers and directors, from filing the petition for voluntary reorganization under Chapter 11.

This conclusion would apply irregardless of the precise construction given to the state court injunction herein. The parties in this case are in disagreement as to the scope of the activities attempted to be enjoined by the state court order in dispute. While Movants contend that that intent of the injunction was to remove all authority from the corporate officers and directors of Debtor, including the ability to file a petition in bankruptcy, Debtor, in contrast, argues that the order in issue lacks the specificity and reasonable detail required under the Ohio Rules of Civil Procedure to achieve such a result. This Court would agree with Debtor that the order in issue lacks the specificity and reasonable detail desirable in an injunction or restraining order, *see* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2955 (1973). In addition, following the Court in *Yaryan Naval Stores*, 214 F. at 565, this Court should not presume that any Court intends to make an order which must be ineffective. As a result, this Court concludes that the order in issue should not be construed to prohibit the voluntary filing herein under Chapter 11 according to its terms but, if it did, consistent with *Merritt v. Mt. Forest Fur Farms of America, Inc.*, 103 F.2d 69 (6th Cir.), *cert. denied* 308 U.S. 583, 60 S.Ct. 105, 84 L.Ed. 488 (1939), it should not be effective to achieve that result.

■ As has previously been noted, certain limitations on the power of a corporation to avail itself of relief in Bankruptcy has been recognized. In particular, although a voluntary petitioner may be solvent or insolvent, and his motive is generally immaterial, a petition may not be filed for purposes of perpetrating a fraud. 1 *Collier on Bankruptcy* ¶ 4.03 at 580 (14th Ed. 1974). Despite the fact that the parties have failed to address themselves to the question of whether there exists sufficient fraud to justify dismissal in this case, in light of the record before this Court and the myriad cases under the Bankruptcy Act dealing with this question, *see Collier, supra* at 580, the Court finds it appropriate to address and determine this issue sua sponte. *Cf. In re Distillers Factors Corp.*, 187 F.2d 685 (3rd Cir.) *cert. denied* 342 U.S. 824, 72 S.Ct. 45, 96 L.Ed. 623 (1951) (Sua sponte dismissal of petition for an arrangement under Chapter XI of the Bankruptcy Act).

*Zeitinger v. Hargadine-McKittrick Dry Goods Co.*, 244 F. 719 (8th Cir.) *cert. denied* 245 U.S. 667, 38 S.Ct. 64, 62 L.Ed. 538 (1917) is perhaps the most widely cited authority

as a source of this doctrine and, factually, seems highly relevant to the case at bar. The McKittrick Dry Goods Co. filed a voluntary petition and was adjudicated a bankrupt by the United States District Court for the Eastern District of Missouri notwithstanding the objections of certain stockholders of the company. The stockholders had been successful as Plaintiffs in an action instituted in the circuit court of the city of St. Louis, Mo. against the company and its board of directors seeking the appointment of a receiver and an accounting against the board of directors for loss, waste, and damage caused by their alleged fraudulent mismanagement of the affairs of the corporation.

The Court of Appeals for the Eighth Circuit, in its review of the District Court's decision denying the petition in intervention, examined the findings of fact, conclusions of law, and decree of the St. Louis circuit court entered after a four week trial and noted the following: "the board of directors had wasted, misappropriated, and lost the assets of the corporation in many ways, in sums aggregating millions of dollars" for which the directors were held liable, including the president who signed the voluntary petition; that the two main creditors of bankrupt named in the petition were not creditors at all; and that the bankrupt in fact had a large net excess of assets over liabilities.

In remanding the case to the District Court with directions to dismiss the voluntary petition the court concluded that

The District Judge, in adjudicating upon a voluntary petition in bankruptcy, is not a ministerial, but a judicial, officer, whose first duty is to see that those who minister in the temple of justice shall not invoke his authority for the accomplishment of fraud. *We are of the opinion that the allegations of the petition in intervention are clearly proved by the exemplified copy of the record of the suit in the circuit court, and that it was the clear duty of the District Court, as well as of this court, in order to prevent the perpetration of what clearly would be a*

*fraud upon the circuit court, the court of bankruptcy, and the intervenors, to dismiss the voluntary petition of appellee.* (emphasis added)

244 F. at 723.

Along similar lines to *Zeitinger v. Hargadine-McKittrick Dry Goods Co.*, 244 F. at 719, other courts have found fraud sufficient to justify the dismissal of a petition in circumstances where a receiver has been appointed due to fraud or mismanagement of directors or officers of the receivership corporation. *In re Distillers Factors Corp.*, 187 F.2d 685 (3rd Cir.) *cert. denied* 324 U.S. 824, 72 S.Ct. 45, 96 L.Ed. 623 (1951); *In re E. C. Denton Stores Co.*, 5 F.Supp. 307 (S.D.Ohio 1933) *appeal dismissed*, 97 F.2d 999 (6th Cir. 1938). *Cf. Porterfield v. Gerstel*, 222 F.2d 137 (5th Cir. 1955). (Allegations of minority directors of corporation that corporation was favorably situated financially and that bankruptcy was being used by majority to wipe out the interests of the minority, if proven, sufficient to justify dismissal.)

Similar to the circumstances involved in *Zeitinger v. Hargadine-McKittrick Dry Goods Co.*, 244 F. at 719, in the present case, the pleadings, findings of fact, and decree of the state court which placed Debtor into receivership evidence some basis for the assertion that there existed fraud or mismanagement in the conduct of the affairs of the Debtor. The complaint in the state court included allegations of conversion, mismanagement, and wasting of assets. On Plaintiff's motion for preliminary injunction, after hearing two days of testimony, a receiver was appointed, the state court finding that two of the directors were commiting acts to "the irreparable injury, loss, and damage" of the corporation. It is the opinion of this Court, however, that the record adduced in the state proceeding presents an insufficient basis for dismissal under this line of authority.

The record of the state court proceeding in *Hargadine-McKittrick Dry Goods Co.*, upon which the Eighth Circuit Court of Appeals based its decision, was produced from a trial on the merits which continued

for over four weeks. The court concluded that the allegations were "clearly proved" and that to "prevent the perpetration of what clearly would be a fraud" it had a duty to dismiss the petition. 244 F. at 723. The decision in the state court in the present case was based upon two days of testimony which resulted in the issuance of a preliminary injunction. This record is clearly inadequate to justify dismissal for fraud. *See In re Marine Transit Corp.*, 79 F.2d 232 (2nd Cir. 1935).

It should be noted that this determination does not leave Movants without remedy to address their grievances. Pursuant to a stipulation of the parties an examiner has been appointed in this case pursuant to 11 U.S.C. § 1104(b) to conduct an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the Debtor and his report was duly filed. Although the conclusions of the report are contraverted, upon motion, these findings may be the subject of proper inquiry. Such an inquiry, upon the record before this Court, is a more suitable remedy than a dismissal for fraud. *See In re Townsend Builders Supply Co.*, 144 F.Supp. 717 (E.D.N.C.1956); *In re Joseph Feld and Co.*, 38 F.Supp. 506 (D.N.J.1941).

## ABSTENTION UNDER § 305

Movants' next contention is that this Court should exercise its power under 11 U.S.C. § 305(a) to abstain or decline jurisdiction of this case. The Court finds the arguments advanced by Movants to abstain in this case to be insufficient, either under the circumstances of this case, or under the express provisions of § 305(a) and its legislative history.

11 U.S.C. § 305 provides in relevant part that

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or * * *

\* \* \* \* \* \*

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.

Movants first argue that allowing this matter to proceed before this Court after the pendency for eight months of the lawsuit in state court resulting in the receivership previously described would not properly serve the interest of economy of administration. Secondly, movants contend that Debtor should not be allowed to utilize the vehicle of a Chapter 11 reorganization proceeding to reinstate Ray G. Hughes's control over the corporation after this authority was lawfully removed by means of a state receivership.

Movants rely on *In re Michael S. Starbuck, Inc.*, 14 B.R. 134, 8 B.C.D. 89, 5 C.B. C.2d 97 (Bkrtcy.S.D.N.Y.1981) in support of their first argument. In *Michael S. Starbuck, Inc.* several creditors filed involuntary petitions under Chapter 7 of the Bankruptcy Code against debtors after the affairs of the debtors were put under the control of an equity receivership as a result of a complaint filed by the Securities and Exchange Commission (SEC) for violation of federal securities law. The receivership had been pending some fifteen months before the filing after which the receiver had concluded a number of his duties in administering the assets under his control including: retention of counsel and an independent accounting firm to assist him; selling securities and using the proceeds to extinguish a large indebtedness of the receivership estate; assisting in an investigation of the debtors' activities by the state attorney general's office; and prosecuting a certain lawsuit to recover damages on behalf of the receivership estate.

In applying the best interests of creditors and debtor test of § 305(a) the court concluded that "efficiency and economy of administration are primary considerations". *Michael S. Starbuck, Inc.*, 14 B.R. at 135, 8 B.C.D. at 90. *See also In re Sun World*

*Broadcasters, Inc.,* 5 B.R. 719, 6 B.C.D. 884, 2 C.B.C.2d 899 (Bkrtcy.M.D.Fla.1980). Noting that the SEC equity receivership in that case was providing for efficient and equitable distribution of the debtors assets the court concluded that .

> [o]ver 1,400 hours and $4,500 have already been expended by the receiver and counsel in the administration of the estate. Allowing this matter to continue as a debtor proceeding under the Bankruptcy Code would result in a terrible waste of time and resources. Many services, already rendered in the administration of the receivership estate, would have to be repeated at additional expense to the estate. No advantage would accrue to the creditors if this matter were to proceed in the bankruptcy court. Rather, their best interests will be served by the continued administration of the equity receivership.

14 B.R. at 135, 8 B.C.D. at 90.

The present case provides no similar justification to abstain for reasons of efficiency and economy of administration. Although it is true, as Movants contend, that the *complaint* resulting in the receivership had been pending some eight months when the receiver was appointed, there is relatively little the receiver could have accomplished in the time between his *appointment* on February 2, 1982 and February 5, 1982 when the Debtor filed its petition, to significantly effect the Debtor's affairs. Further, the hearing resulting in the appointment of the receiver in the state court action was not a determination of the merits of that controversy but merely a determination of whether the status quo should be maintained pending adjudication of the merits.

Movants claim support for their second argument in favor of abstention in *In re Win-Sum Sports, Inc.,* 14 B.R. 389, 5 C.B.C.2d 248 (Bkrtcy.D.Conn.1981). The Court in *Win-Sum Sports* dismissed the involuntary petition therein pursuant to § 305(a)(1) reasoning that Benson, one of the 50% shareholders, and the petitioning creditors, two of which had been indemnified for their joining in the involuntary

petition by Benson, were seeking to use the bankruptcy court as an alternate approach to state court procedures to resolve intra-company management and stockholder problems. The involuntary petition was contested by Paluska, the other 50% shareholder who had negotiated a bank loan to make Win-Sum current on all of its obligations, except those to petitioners, that were past due at the time of the filing of the involuntary petition. In considering whether or not abstention was proper the court looked to the relevant legislative history of § 305(a)(1) which provides as follows:

> This section recognizes that there are cases in which it would be appropriate for the court to decline jurisdiction. Abstention under this section, however, is of jurisdiction over the entire case. The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by the creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an insolvency case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment.

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 325, Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 35, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6281.

The Court concluded that Benson and the petitioning creditors were comparable to the "recalcitrant" creditor described in the legislative history of § 305(a)(1).

The present case reveals similarities to *Win-Sum Sports* relating to the intra-company problems between Wilbur Donaldson, as 49% stockholder of the Debtor, and Ray G. Hughes, as 51% stockholder as to who will maintain control of the daily operations of the business: Donaldson was appointed by the receiver, Ralph DeNune, III, as manager of the business during the pendency of the receivership; Hughes regained the control he formerly exercised by becoming Chief Operating Officer of the Debtor-in-Possession. The similarities end there.

The critical element of *Win-Sum Sports*, its application of the legislative design of § 305(a)(1) to allow out-of-court insolvency arrangements to continue if those arrangements are in the best interests of all concerned, is lacking. There is no out-of-court arrangement being attempted in the present case. Indeed, the Debtor is attempting to voluntarily reorganize its business within the context of a voluntary Chapter 11 reorganization proceeding, a task this Court will not interfere with.

 More instructive in illustrating the relevance of § 305(a)(1) abstention to a voluntary Chapter 11 proceeding is *Hartigan v. Pine Lake Village Apartment Co.*, 16 B.R. 750 (Bkrtcy.S.D.N.Y.1982). The principal asset of debtor, the Pine Lake Village Apartment Co., consisted of an apartment complex encumbered by a first mortgage held by plaintiff in an amount greatly exceeding the book value of the property. Plaintiff-mortgagee commenced an action in state court to foreclose its mortgage and, shortly thereafter, debtor filed its voluntary Chapter 11 petition. In applying the best interest of the creditors and the debtor test of § 305(a)(1) the court concluded:

This court would be hard pressed to conclude that a dismissal of this case would serve the interests of the debtor as well as those of the plaintiff-mortgagee. To be sure, Code § 305 expressly requires a determination that not only will the interests of creditors be better served by a dismissal or suspension, but also that 'the interests of . . . the debtor would be better served by such dismissal or suspension.' Obviously, when the debtor is involuntarily thrown into bankruptcy during a pending out of court arrangement, the debtor's interests would be better served by allowing the debtor's choice of method to proceed; Code § 305 recognizes this approach. It defies credulity to say that the debtor's interest would be better served by a dismissal when the debtor voluntarily sought the mechanics of Chapter 11 for the purpose of rehabilitation and a fresh start.

16 B.R. at 753. Thus, proper application of the test of § 305(a)(1) requires that the best interests of *both* creditors and debtor be served, *see also In re WPAS, Inc.*, 6 B.R. 44, 6 B.C.D. 1183 (Bkrtcy.M.D.Fla.1980). In the present case Movants fail to explain precisely how these best interests would be served by denying Debtor the opportunity to reorganize under Chapter 11 of the Bankruptcy Code. Section 305(c) plainly states that an order dismissing a case or suspending all proceedings in a case, or a decision not to dismiss or suspend, is not reviewable by appeal or otherwise. *In re Covey*, 650 F.2d 877, 879 (7th Cir. 1981). Consequently, this section should be used sparingly, and not as a substitute for a motion to dismiss under Code § 1112(b), *Hartigan v. Pine Lake Village Apartment Co.*, 16 B.R. at 754, or for other reasons not in conformity to the design of the statute. As one court remarked:

It also is apparent that the courts will have to exercise great care in using the discretion granted by section 305(a) to dismiss a case. To be sure, it could be said that dismissal would be in interests of creditors and the debtor in many of the proceedings commenced under the Bankruptcy Code; this Court could dispose of much of its calendar if its discretion was unbridled. There is an inherent risk to our system of jurisprudence in any Act of Congress which gives the courts such broad powers to refuse jurisdiction over a case. This risk is compounded by the finality and non-appealability of an order entered under this section. Indeed, by giving an example of a situation in which abstention or dismissal would be appropriate, Congress has indicated that it intended section 305(a) dismissals to be the exception rather than a rule.

*In re Luftek, Inc.*, 6 B.R. 539, 548 (Bkrtcy.E.D.N.Y.1980).

In conclusion, this Court finds that the dismissal of this Chapter 11 proceeding under § 305 would not be in the best interest of the Debtor nor its creditors. The Debtor should be given every opportunity to effect a successful reorganization and given a fresh start. This Court should not deny the Debtor this opportunity because of intra-company disputes it can competently resolve. Also, this finding does not preclude any subsequent considerations of grounds

for dismissal under § 1112(b) or whether a trustee should be appointed to conduct the affairs of the Debtor.

For the foregoing reasons, it is hereby,

ORDERED that Movants motion to dismiss this voluntary Chapter 11 proceeding be, and hereby is, overruled. It is,

FURTHER ORDERED that Ralph De-Nune, III, receiver appointed in Case No. 81–01850 before the Common Pleas Court of Lucas County, Ohio shall perform the following duties pursuant to §§ 543(b) and (c) of the Bankruptcy Code, and Rule 604 of the Bankruptcy Rules:

1. Deliver to the Debtor any property of the Debtor transferred to him, or the proceeds of such property that is in his possession, custody and control;

2. File an accounting of any property of the Debtor, or proceeds of such property, that, at any time, came into his possession, custody, or control; and

3. Submit an application for the payment of reasonable compensation for services rendered and costs and expenses incurred as receiver.